# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

|  |  |  |
|---|---|---|
| **KEVIN B. BURNS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 06-2311-SHM-dkv** |
| **v.** | ) | |
| | ) | **Death Penalty Case** |
| **RICKY BELL, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

## ANSWER TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS

---

## I. PRELIMINARY STATEMENT

Pursuant to this Court's order entered on April 19, 2007, (Doc. No. 21) and Rule 5 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules), respondent submits the following answer to the amended petition for writ of habeas corpus.

Petitioner Kevin B. Burns filed his *pro se* petition for habeas corpus relief on May 23, 2006. (Doc. No. 1) That petition was amended by appointed counsel on February 20, 2007. (Doc. No. 8) The petition as amended challenges petitioner's capital sentence resulting from a jury verdict which found him guilty of two counts of felony murder.[1]

---

[1]The jury also found petitioner guilty of two counts of attempted felony murder, but the Court of Criminal Appeals reversed the attempt convictions on direct appeal. *See State v. Burns,* 979 S.W.2d 276 (Tenn. 1998); *State v. Burns,* No.02C01-9605-CR-00170, 1997 WL 418492 (Tenn. Crim. App. 1997).

The jury sentenced petitioner to death for the murder of Damond Dawson during the perpetration of a robbery and life imprisonment without possibility of parole for the murder of Tracey Johnson.

Respondent Ricky Bell, Warden of the Riverbend Maximum Security Institution, is the officer currently charged with the custody of the prisoner. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2241, as the crimes for which petitioner received the convictions and sentences occurred in Shelby County, Tennessee.

## A.  Exhaustion of State Remedies

Habeas relief may be granted only where a state prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under 28 U.S.C. § 2254(b)(1)(A), an applicant for habeas relief must first exhaust the available remedies in the state courts, including appeal through the highest state appellate court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999). The exhaustion requirement mandates that a criminal defendant "fairly present" both the factual and legal bases of his claim to the state courts.  "A state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1350 (2004).

Petitioner is deemed to have exhausted his state remedies under 28 U.S.C. §

2254(b), since there is no procedure available under Tennessee law for petitioner to present any claim in the Tennessee state courts challenging the convictions and sentence at issue in this case. Although petitioner has alleged grounds for relief that have not been fairly or adequately presented to the state courts in satisfaction of § 2254(b)'s exhaustion requirement, those claims are now barred from presentation to the state courts by the statute of limitations under Tenn. Code Ann. § 40-30-102(a) and the "one petition" limitation of § 40-30-102(c) and, thus, are procedurally defaulted in this proceeding, as alleged more specifically in the Warden's response to specific claims in Part VI, *infra* p. 17, *et seq.*

## B.  State Court Records

Pursuant to Habeas Rules 5(c) and (d) and this Court's order entered on April 24, 2007 (Doc. No.22), respondent is submitting the following portions of the state court records under separate cover for use in these proceedings:

### 1.  Technical record, transcript, and material from petitioner's direct appeal:

| | |
|---|---|
| Addendum 1: | Volumes 1-2 of record from petitioner's direct appeal including transcript of pretrial motion to suppress; |
| Addendum 2: | Volumes 3-10 of record from petitioner's direct appeal including transcript of voir dire, trial, and exhibits; |
| Addendum 3: | Petitioner's brief on direct appeal before the Tennessee Court of Criminal Appeals; |
| Addendum 4: | State's brief before the Tennessee Court of Criminal Appeals; |

Addendum 5:        Opinion and Judgment from the Court of Criminal Appeals on direct appeal, *State v. Burns,* No.02C01-9605-CR-00170, 1997 WL 418492 (Tenn. Crim. App., July 25, 1997);

Addendum 6:        Petitioner's principal and supplemental briefs on direct appeal before the Tennessee Supreme Court;

Addendum 7:        State's principal and supplemental briefs on direct appeal before the Tennessee Supreme Court;

Addendum 8:        Opinion and Judgment of the Tennessee Supreme Court;

Addendum 9:        Petitioner's application for writ of certiorari in the United States Supreme Court;

Addendum 10:      State's response to petition for writ of certiorari;

Addendum 11:      Order denying writ of certiorari.

**2. Technical record, transcript, and material from state collateral review:**

Addendum 12:      Volume 1-4 of appellate record including exhibits from petitioner's post-conviction proceeding held pursuant to Tenn. Code Ann. 40-30-101, et seq.;

Addendum 13:      Volumes 5-13 of appellate record from petitioner's post-conviction proceeding;

Addendum 14:      Volume 14 of appellate record from petitioner's post-conviction proceeding including post-conviction petitions and various motions;

Addendum 15:      Volumes 15-16 appellate record from petitioner's post-conviction proceeding suspected duplicates of expert proof transcript;

Addendum 16:      Petitioner's application for interlocutory appeal under Tenn. R. App. P. 9;

Addendum 17:    State's response to petitioner's application for interlocutory appeal under Tenn. R. App. P. 9;

Addendum 18:    Order of the Court of Criminal Appeals granting interlocutory appeal under Tenn. R. App. P. 9;

Addendum 19:    Transcript and appellate record from Tenn. R. App. P. 9 interlocutory appeal (3 volumes);

Addendum 20:    Petitioner's brief on Rule 9 interlocutory appeal;

Addendum 21:    State's responsive brief on Rule 9 interlocutory appeal;

Addendum 22:    Petitioner's reply brief on Rule 9 interlocutory appeal;

Addendum 23:    Opinion reversing the trial court order disqualifying petitioner's counsel, *Burns v. State,* W2000-0287-CCA-R9-PD, 2001 WL 902817 (Tenn. Cr. App. 2001);

Addendum 24:    Petitioner's application for extraordinary interlocutory appeal under Tenn. R. App. P. 10;

Addendum 25:    Order denying petitioner's Rule 10 interlocutory appeal; No. W2003-01878-CCA-R10-PD;

Addendum 26:    Petitioner's brief on post-conviction appeal before the Court of Criminal Appeals pursuant to Tenn. R. App. P. 3;

Addendum 27:    State's brief on post conviction appeal before the Court of Criminal Appeals;

Addendum 28:    Petitioner's reply brief

Addendum 29:    Opinion of the Court of Criminal Appeals affirming the Denial of post-conviction relief, *Burns v. State,* W2004-00914-CCA-R3-PD, 2005 WL 3504990(Tenn. Ct. App. 2005);

Addendum 30:    Petitioner's application for permission to appeal to the Tennessee Supreme Court pursuant to Tenn. R. App. P. 11;

Addendum 31:    State's response to petitioner's Rule 11 application;

Addendum 32:    Tennessee Supreme Court order denying petitioner's Rule 11
application.

## II. STATEMENT OF THE CASE

A Shelby County jury convicted petitioner Kevin B. Burns of two counts of felony murder and two counts of attempted felony murder in connection with an altercation that occurred on April 20, 1992, and left two men dead and two others wounded.  (Add. 1, v. 1, p.108)  Petitioner and his co-defendants were tried separately.

The jury sentenced petitioner to death for the murder of Damon Dawson and to life imprisonment for the murder of Tracey Johnson. (Add. 1, p.109)  In imposing the capital sentence, the jury found that the evidence supported one aggravating circumstance — that petitioner had, in the course of the murder, knowingly created a great risk of death to two or more persons other than the victims.  Tenn. Code Ann. § 39-13-204(i)(3).  The jury determined that this aggravating factor outweighed any proof in mitigation beyond a reasonable doubt.

The Court of Criminal Appeals affirmed the conviction and sentence as to the two counts of felony murder, but reversed on the charges of attempted felony murder.  *See State v. Kevin Burns,* No.02C01-9605-CR-00170, 1997 WL 418492 (Tenn. Crim. App., July 25, 1997).  (Add. 5)  The Tennessee Supreme Court affirmed petitioner's death sentence.  *State v. Burns,* 979 S.W.2d 276 (Tenn. 1998).  (Add. 8)  Petitioner then petitioned for certiorari review by the United States Supreme Court.  (Add. 9) The

Supreme Court denied the petition on June 24, 1999. *Burns v. Tennessee,* 527 U.S. 1039 (1999). (Add. 11)

Petitioner filed his petition for post-conviction relief in state court on August 19, 1999. (Add. 14, p. 4) Appointed counsel amended the petition twice before the trial court heard proof on petitioner's claims. (Add. 14, pp. 29; 78) Appointed counsel was initially disqualified by the trial court on the State's motion. (Add. 19, 21-22) Petitioner successfully appealed that interlocutory order pursuant to Tenn. R. App. P. 9. (Add. 23) The trial court initially approved appointed counsel's request for expert fees pending the Tennessee Supreme Court's approval of the request. (Add. 25, p.1) When the Court denied further funding, petitioner sought extraordinary appeal pursuant to Tenn. R. App. P. 10. (Add. 24) This application was denied. (Add. 25) The trial court, on February 20, 2004, after conducting an evidentiary hearing on petitioner's claims, denied post-conviction relief. (Add. 12, pp. 61-86)

Petitioner appealed pursuant to Tenn. R. App. P. 3. On December 21, 2005, the Court of Criminal Appeals affirmed the trial court's judgment. *See Kevin Burns v. State,* W2004-00914-CCA-R3-PD, 2005 WL 3504990 (Tenn. Crim. App. 2005). ( Add. 29) Petitioner sought permission under Tenn. R. App. P. 11 to appeal to the Tennessee Supreme Court from the Court of Criminal Appeals' judgment. (Add. 30) The Tennessee Supreme Court denied the application on April 24, 2006. (Add. 32)

## III.  SUMMARY OF THE EVIDENCE

**A.    TRIAL**

Petitioner was represented by two sets of counsel.  Originally-appointed counsel withdrew from representation well in advance of trial at the request of petitioner's mother.  The second set of counsel was appointed to represent petitioner through the remainder of the pretrial, trial, and direct appeal proceedings. The Tennessee Supreme Court provided the following summary of evidence presented at petitioner's trial:

### *Guilt Phase*

On April 20, 1992, four young men, Damond Dawson, Tracey Johnson, Eric Thomas, and Tommie Blackman, were sitting in a car in Dawson's driveway in Memphis.  Dawson was in the driver's seat, Johnson was in the front passenger seat, Thomas was in the back seat behind Dawson, and Blackman was in the back seat behind Johnson.

The defendant, Kevin Burns, and Carlito Adams, who knew Blackman, walked up to the passenger side of the car. Adams pulled out a handgun and told Blackman to get out of the car.  When Blackman refused, Burns pulled out a handgun and went around to the driver's side of the car. Blackman got out of the car and fled. Adams said "get him," and three or four more men appeared from behind hedges and fired at Blackman.

Eric Jones, age fourteen, was playing basketball at Dawson's house with three friends.   Jones saw the men in the car removing jewelry and pulling money from their pockets.   Seconds later, Jones saw Blackman running toward him. Amidst gunshots, Jones and Blackman escaped to the back of the house; Jones' three friends ran to an adjacent yard.  Once inside the house, Jones heard seven or eight more gunshots.

Mary Jones, Eric Jones' mother, lived across the street from the Dawsons. She saw Adams shoot Johnson once in the chest. She saw Kevin Burns shoot Dawson several times, walk to the front of the car, and then shoot Dawson again.  Ms. Jones unequivocally identified Burns and stated that

8

she got "a real good look in his face" as he ran toward her after the shootings.

Tracey Johnson died at the scene. Damond Dawson, who suffered five gunshots to his arm, buttocks, chest, and hip was alive when police arrived but died after being transported to the hospital. Eric Thomas, who sustained gunshots to his chest and stomach, survived and made a photo identification of Kevin Burns two days after the incident. Thomas testified that Burns and the others had "opened fire" after robbing him and his friends of their jewelry and money. Thomas said that he initially told police he had been shot by Adams, but explained that he believed he was going to die and gave police the only name he knew, which was Adams.

On June 23, 1992, Burns was found in Chicago and arrested. After being advised of his rights and signing a waiver, the defendant gave a statement in which he admitted his role in the killings. He said that he had received a telephone call from Kevin Shaw, who told him that four men had "jumped" Shaw's cousin. Burns, Shaw, and four others intended to fight the four men, and Shaw gave Burns a .32 caliber handgun. As the others approached a car with four men sitting in it, Burns stayed behind. He heard a shot, saw a man running across the yard, and fired three shots. He then left the scene with the other men.

After the guilt phase of the trial, the jury deliberated and returned verdicts of guilty for two counts of felony murder and two counts of attempted felony murder. The trial moved into the penalty phase of the proceedings for the jury to determine the punishment for each of the felony murder convictions.

### Penalty Phase

Jonnie Dawson, mother of Damond Dawson, testified that Damond was the youngest of her three children and seventeen years of age when he was killed. She said he was a good son who was very good at athletics. The neighborhood had changed after the killings; people locked their doors and were afraid. Ms. Dawson testified that she no longer knew what it was like to be happy.

Brenda Hudson, mother of Tracey Johnson, testified that Tracey was the oldest of her three children and twenty years of age when he was killed. He had been working at Wal-Mart and saving money for his four-month-old

daughter.  Tracey's death had greatly affected Ms. Hudson's other two children, Tracey's grandfather, and Tracey's young daughter:

> When you go over to her house to see her, she has a picture in a frame and she will show you. She'll say, 'this is my father-this is my daddy, Tracey. He lives in God's house up in heaven.'  And it's hard for me to go see her a lot because it breaks my heart to hear her say that.

In mitigation, Leslie Burns, the defendant's mother, testified that the defendant was twenty-six years of age and had twelve brothers and sisters. He had graduated from high school and had presented no disciplinary problems while in school.  The defendant's father, Reverend Obra Carter, testified that his son had always been obedient and well-mannered.  Phillip Carter, the defendant's brother, testified that the defendant had been active in the church and had always tried to avoid trouble.

Norman McDonald, the defendant's Sunday School teacher, testified that he had known Kevin Burns for several years.  According to McDonald, Burns was a "faithful" young man who had always attended church regularly.  Mary Wilson, a Captain with the Shelby County Sheriff's Department, and Bennet Dean, a volunteer chaplain, both testified that Burns had actively participated in religious services while in custody for these offenses.

The prosecution relied on two aggravating circumstances to seek the death penalty for the felony murder convictions — that the defendant knowingly created a great risk of death to two or more persons, other than the victim murdered, during the act of murder, and that the murder had been committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another.  Tenn. Code Ann. § 39-13-204(i)(3) and (6) (1997 & Supp. 1998).

With regard to the felony murder of Damond Dawson, the jury imposed the death penalty after finding that the evidence supported the "great risk of death" aggravating circumstance and that this factor outweighed the evidence of mitigating factors beyond a reasonable doubt.  With regard to the felony murder of Tracey Johnson, the jury imposed a sentence of life imprisonment.

The trial court entered judgment in accordance with the jury's verdict.

*State v. Burns,* 979 S.W.2d 276, 278-79 (Tenn. 1998).

## B.    POST-CONVICTION

Petitioner's state post-conviction petition, as amended, alleged multiple instances of ineffective assistance of counsel, denials of due process, and withholding exculpatory evidence.  The trial court held an evidentiary hearing which involved two weeks of testimony and spanned several months. (Add. 12, v. 1, p. 62; Add. 13-15)  Due to extensive interlocutory appellate action and petitioner's counsel's requests for continuances, the post-conviction action spanned several years.  (Add. 12, pp. 61-62; Add. 19-25) The trial court heard from both sets of counsel appointed to represent petitioner at his criminal trial.  In addition, the court heard from several lay witnesses presented by the petitioner.  (Add. 13) The court also heard from two expert witnesses, Dr. Norton who discussed the family environment of the petitioner (Add. 15, v. 15), and Dr. Woods, who discussed not only family of origin issues but also the mental capacity of the petitioner.  (Add. 15, v. 16)  The testimony conflicted as to the mitigation proof available at petitioner's trial, the petitioner's hairstyle at the time of the offense, and the role his family life and environment played in a proposed mitigation defense.

After hearing the proof, the post-conviction court denied petitioner relief finding no merit to the petitioner's allegations.  (Add. 12, pp. 64-86)  Petitioner appealed the findings of the trial court.  The Court of Criminal Appeals, in its 72-page opinion filed

on December 21, 2005, detailed the facts as presented in the post conviction evidentiary

hearing.  *Burns v. State,* No. W2004-00914-CCA-R3-PD, 2005 WL 3504990 (Tenn.

Crim. App. 2005(perm. app. denied April 24, 2006(Add. 29). *See Burns v. State,* 2005

WL 3504990, *1-30.  The Court of Criminal Appeals affirmed the trial court's

judgment.  The Supreme Court denied petitioner's Rule 11 application on April 24,

2006. (Add. 32)

## IV.  ISSUES PRESENTED FOR REVIEW

Petitioner initiated this habeas corpus action by filing his petition *pro se* on May

23, 2006.  (Doc. No. 1-1) Petitioner filed his amended petition on February 19, 2007.

(Doc. No. 8) The *pro se* petition as amended raises the following specific claims for relief:

CLAIM 1: Trial counsel, in violation of the Sixth, Eighth and Fourteenth
Amendments, provided ineffective assistance at the guilt phase of
petitioner's trial. (Doc. No. 1-1, ¶ 21, a-k; Doc. No. 8, ¶¶ 83-95)

CLAIM 2: The State withheld material exculpatory evidence in violation
of the Sixth, Eighth and Fourteenth Amendments. (Doc. No. 1-1, ¶ 20,
Doc. 8, ¶¶ 96-107)

CLAIM 3:  In violation of the Sixth, Eighth and Fourteenth Amendments,
the State asserted in petitioner's trial a position in apparent contradiction
to the State's theory in the trial of petitioner's co-defendant Derrick
Garrin. (Doc. No.1-1, ¶ 22, Doc. No. 8, ¶¶ 108-114)

CLAIM 4: In violation of  the Sixth, Eighth and Fourteenth Amendments,
the State knowingly presented false testimony from Eric Thomas indicating
petitioner shot him and Damond Dawson.  (Doc. No. 8, ¶¶ 115-120)

CLAIM 5: In violation of  the Sixth, Eighth and Fourteenth Amendments,
the State knowingly presented false testimony from Eric Jones and Eric
Thomas indicating that they saw persons outside Dawson's car demanding

money and jewelry immediately prior to the shooting.  (Doc. No. 8, ¶¶ 121-125)

CLAIM 6: In violation of  the Sixth, Eighth and Fourteenth Amendments, the photographic array from which Eric Thomas identified the petitioner was unduly suggestive. (Doc. No. 8, ¶¶ 126-129)

CLAIM 7: In violation of  the Fifth, Eighth and Fourteenth Amendments, the trial court admitted petitioner's statement.  (Doc. No. 1-1, ¶ 12, Doc. No. 8, ¶¶ 130-135)

CLAIM 8: In the suppression hearing concerning petitioner's statement, the State presented, in violation of  the Sixth, Eighth and Fourteenth Amendments, false testimony from F.B.I. Agents Landman, Bakken and Harbaugh. (Doc. No. 8, ¶¶ 136-140)

CLAIM 9: In violation of  the Sixth, Eighth and Fourteenth Amendments, the trial judge gave unconstitutional or otherwise improper jury instructions at the guilt stage of petitioner's trial. (Doc. No. 1-1, ¶ 19, Doc. No. 8,¶¶ 141-148)

CLAIM 10: In violation of  the Sixth, Eighth and Fourteenth Amendments, extraneous improper influences affected the jury's verdict.(Doc. No.1-1, ¶25, Doc. 8, ¶¶144-148)

CLAIM 11: In violation of  the Sixth, Eighth and Fourteenth Amendments, trial counsel rendered ineffective assistance at the sentencing phase of petitioner's trial.  (Doc. No. 1-1, ¶ 21, Doc. No. 8,¶¶ 149-256)

CLAIM 12: In violation of  the Sixth, Eighth and Fourteenth Amendments, the State presented victim impact testimony at the sentencing hearing. (Doc. No. 1-1, ¶ 8, Doc. No. 8, ¶¶ 257-259)

CLAIM 13: In violation of  the Sixth, Eighth and Fourteenth Amendments, the trial judge gave constitutionally impermissible jury instructions at sentencing.  (Doc. No. 1-1, ¶ 19, Doc. No. 8, ¶¶ 260-261.3)

CLAIM 14: In violation of  the Sixth, Eighth and Fourteenth Amendments, the prosecution made improper remarks during closing argument at the sentencing stage by stating, "You know what your duty before God is."

(Doc. No. 1-1, ¶ 7(c), Doc. No. 8, ¶¶ 262-263)

CLAIM 15: In violation of the Sixth, Eighth and Fourteenth Amendments, the trial court refused to answer questions posed by the jury during sentencing deliberations. (Doc. No. 1-1, ¶ 16, Doc. No. 8, ¶¶ 264-66)

CLAIM 16: In violation of the Sixth, Eighth and Fourteenth Amendments, women were systematically excluded from the position of grand jury foreperson on the grand jury that indicted petitioner. (Doc. 8, ¶¶ 267-272)

CLAIM 17: In violation of the Fifth, Sixth, Eighth and Fourteenth Amendments, the indictments against Burns did not allege aggravating circumstances. (Doc. No. 1-1, ¶ 27, Doc. No. 8, ¶¶ 273-74)

CLAIM 18: Petitioner's death sentence violates the Sixth, Eighth, and Fourteenth Amendments. (Doc. No. 1-1, ¶¶ 28-29, Doc. No. 8, ¶¶ 275-78)

CLAIM 19: The absence of uniform standards guiding prosecutors, including the prosecutor in petitioner's case, in deciding whether to seek a capital sentence violates the Sixth, Eighth and Fourteenth Amendments. (Doc. No. 1-1, ¶ 24, Doc. No. 8, ¶¶ 279-281)

CLAIM 20: Petitioner's death sentence is violative of the Eighth and Fourteenth Amendments as arbitrary in light of the failure to charge other suspected defendants and the success in obtaining life sentences for other defendants. (Doc. No. 1-1, ¶ 24, Doc. No. 8, ¶¶ 282-287)

CLAIM 21: Petitioner's conviction and sentence violate Article VI, Clause 2 of the Constitution, due to the State's disregard of petitioner's international law rights established in various treaties and covenants between the United States and other signatories insuring, among others, the right to fair trial, to be free from coercion to confess, the right to liberty and the right to be free from arbitrary searches. (Doc. No. 1-1, ¶ 30, Doc. No. 8, ¶¶ 288-289.4.20)

CLAIM 22: Petitioner's conviction and sentence violate the Eighth and Fourteenth Amendments, because petitioner is actually innocent. (Doc. No. 1-1, ¶¶ 11;17, Doc. No. 8, ¶¶ 290-292.2)

CLAIM 23: Petitioner is incompetent to be executed without violating the Eighth and Fourteenth Amendments.  At the time of any scheduled execution petitioner will not be competent.  (Doc. No. 8, ¶¶ 293-294)

CLAIM 24: In violation of  the Eighth and Fourteenth Amendments, appellate counsel was ineffective.  (Doc. No. 1-1, ¶ 21, Doc. No. ¶¶ 295-296)

CLAIM 25: If this Court finds two or more constitutional errors which individually would not constitute harmful errors, their combination renders the conviction and/or sentence unconstitutional.  (Doc. No.8, ¶¶ 297-298)

## V.  APPLICABLE LAW

### A.    Availability of the writ

Federal courts may not grant a writ of habeas corpus to correct an error of fact. *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860 (1993).  Likewise a court may not grant the writ to remedy an error of state law.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480 (1991).

### B.    Standard of Review

Review of petitioner's claims is governed by 28 U.S.C. § 2254(d) which states that an application for habeas relief shall not be granted:

> unless the adjudication of the claim —
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's adjudication is "contrary to" Supreme Court precedent under §2254 (d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495 (2000). A state court's adjudication involves "an unreasonable application of" Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case," or if the court unreasonably refuses to extend, or unreasonably extends, existing legal principles from the Court's precedents to a new context. *Williams*, 529 U.S. at 407. The state court's application must be more than incorrect or erroneous; it must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

The Tennessee state courts have made relevant findings of fact on the issues presented in this habeas petition. The factual determinations of the state courts are presumed to be correct, and Petitioner must rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Unless Petitioner can plead and prove facts meeting this burden, the federal court must presume the state courts' determination of the facts to be true and review the reasonableness of the state courts' application of federal law. *Dukes v. Hunt*, 952 F.Supp. 276, 280 (E.D.N.C. 1996); *see also Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir. 2004) (federal court presumes state court's factual

determinations are correct unless rebutted by clear and convincing evidence).  In the absence of express findings, federal courts must give appropriate deference to implicit findings of the state courts that can be inferred from the record. *Fowler v. Jago*, 683 F.2d 983, 987-89 (6th Cir. 1982).  This presumption of correctness for both explicit and implicit findings of fact extends to credibility findings, *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), and applies to findings of both the trial and appellate courts. *Loveday v. Davis*, 697 F.2d 135, 139 (6th Cir. 1983).

## VI.  RESPONSE TO SPECIFIC CLAIMS

**CLAIM 1: Trial counsel, in violation of the Sixth, Eighth and Fourteenth Amendments, provided ineffective assistance at the guilt phase of petitioner's trial. (Doc. No. 1-1, ¶ 21, a-k; Doc. No. 8, ¶¶ 83-95)**

Petitioner alleges that trial counsel provided ineffective assistance to petitioner at the guilt phase of his trial by (a) failing to investigate and present evidence (Doc. No. 8, ¶ 84-88.13); (b)  failing to cross examine effectively Eric Thomas, Mary Jones and the FBI agents who took petitioner's statement (Doc. No. 8, ¶¶ 89-92); (c) failing to suppress Eric Thomas' identification of petitioner; (d) failing to evaluate the state's discovery materials; and (e)  "failing to obtain and/or review and employ effectively the trial transcripts from the trials of co-defendants Derrick Garrin and Carlito Adams." (Doc. No. 1-1, ¶ 21, a-k; Doc. No. 8, ¶¶ 83-87)  Petitioner also challenges as ineffective assistance (f) trial counsel's failure to suppress petitioner's own statements to the FBI, claiming that the statement was "created," and that petitioner had not been advised of

17

his fifth amendment right against self incrimination.

**A.    Trial counsel failed to investigate and present evidence**.

In paragraph 84 of the amended petition, petitioner alleges that counsel was ineffective because they conducted only limited investigation.  Petitioner made this claim in state court in his first amended petition for post-conviction relief. (Add. 14, pp. 29-31)

In rejecting petitioner's claim on the merits, the Court of Criminal Appeals identified *Strickland v. Washington,* 466 U.S. 668, 686 (1984), as the appropriate standard to apply to petitioner's claim.   *Burns v. State*, 2005 WL 3504990, *48-50. (Add. 29, pp. 51-52)   After setting out the two-part test for ineffective assistance of counsel espoused by the Supreme Court in *Strickland,* the state court held that the trial court's denial of relief was supported by the record. The court ruled as follows:

> As found by the post-conviction court, the testimony showed that trial counsel and their investigator attempted to interview witnesses to the crimes.  Tommie Blackman refused to talk to them.  Counsel also had the entire file of the prosecution and had the transcripts of the trials of Carlito Adams and Derrick Garrin.  One co-defendant specifically identified the petitioner as the "trigger man."  Both Carlito Adams and Kevin Shaw described the shooter as wearing a black trench coat.  Buckner and Garrin both stated that the petitioner shared in the proceeds of the robbery, and Garrin stated that the petitioner fired shots.  There is no proof that the petitioner provided trial counsel with the names of any of the numerous witnesses who could have testified that he had short hair. One witness identified the petitioner two days after the incident by photographic lineup in which the petitioner had a short hairstyle.  Another witness described the petitioner as having a jheri curl.  The petitioner refused to cooperate with counsel by changing his hairstyle or providing counsel with witnesses regarding his hairstyle or manner of dress.  Further, he hampered any

18

attempt to establish his lesser culpability by suddenly refusing to testify on his own behalf.

There was no proof presented that any of the participants other than the petitioner was wearing a trench coat during the shootings. The petitioner asserts that Kevin Shaw had a jheri curl at the time of the offenses. In support thereof, defense witness Rodney Weatherspoon identified Kevin Shaw as wearing longer hair with "the little curl." Notwithstanding, defense witness Kevin Whitaker testified that Kevin Shaw wore his hair in a "high-top fade." This conflicting evidence fails to identify Kevin Shaw as wearing a black trench coat or wearing a long jheri curl at the time of the offenses. The post-conviction court properly concluded that the petitioner failed to present evidence establishing that he was mistakenly identified as the shooter.

The conflicting testimony of the co-defendants, the petitioner's refusal to cooperate with counsel, his statement to FBI agents, and his decision not to testify at trial hindered trial counsel's efforts to pursue a theory of lesser culpability. Even if, as the petitioner claims, trial counsel were deficient in not presenting witnesses to testify regarding the length of his hairstyle, it is clear that the identification of him as the shooter does not rest solely upon his hairstyle. The proof, including the petitioner's statement to the FBI, established, beyond a reasonable doubt, that he was guilty of the felony murders of the victims, Johnson and Dawson. Thus, he has failed to show that he was prejudiced by counsel's alleged failure to further investigate his lesser culpability and the alleged failure to present evidence of his lesser culpability.

*Burns v. State,* 2005 WL 3504990, at 56-57. (Add. 29, pp. 60-61).

Petitioner cannot show that the state courts' determination is "contrary to" or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1) or is otherwise "objectively unreasonable." *Williams,* 529 U.S. at 407-09. Relief should be denied.

In Paragraph 85, petitioner provides a list of names "including but not limited to"

37 witnesses whom, he alleges, counsel failed to interview or otherwise prepare for trial. Petitioner first presented a claim of ineffective assistance of trial counsel in his state post-conviction proceeding.  (Add. 14, p. 4) Petitioner made no mention of these individuals by name in his original petition for post-conviction relief.

The first amended petition that appointed counsel filed in state court listed co-defendants Derrick Garrin and Carlito Adams as potential witnesses which trial counsel allegedly failed to call.  (Add. 14, p. 30) Petitioner indicated that Garrin and Adams both wanted to testify on petitioner's behalf and that Garrin specifically wished to testify at petitioner's trial that Garrin did not see petitioner fire any shots in the incident.  (Add. 14, p. 31)  The amended petition also listed Shaw, Buckner and Morris as potential witnesses at trial.  (Add. 14, p. 31)  Petitioner suggested their testimony would have shown that petitioner was not the shooter and that this testimony would have affected the sentence if not the finding of guilt. The petition also identified a Maleko Fields, an acquaintance of Carlito Adams, identified by police as a potential suspect and witness to the crime.  (Add. 14, p. 33) None of these witnesses testified on petitioner's behalf in state court.  (Add. 13, v.2, ii-iv)

In addition to his experts, petitioner called the following witnesses at the post-conviction evidentiary hearing: Mary Jones, Kevin Whitaker, Lloyd Davis, Samuel Brooks, Rodney Weatherspoon, Arlee Bruce, Renita Burns and George Michael Hissong. (Add. 13, v.2, ii-iv)  After hearing petitioner's proof as to ineffective assistance in calling,

20

cross-examining and preparing witnesses for trial, the post-conviction court denied petitioner relief and found no merit to the allegations. (Add. 12, pp. 64-86)  Petitioner appealed the findings of the trial court. *See Burns v. State,* 2005 WL 3504990, at 48. In affirming the denial of relief, the court held that the petitioner's proof failed to show either the deficient performance or prejudice required by *Strickland*. *Burns v. State*, 2005 WL 3504990, at 56-57 (Add. 29, pp. 60-61). Petitioner fails to show that the state courts' determination  is "contrary to" or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1) or is otherwise "objectively unreasonable." *Williams*, 529 U.S. at 407-09.  Relief should be denied.

**B.    Trial Counsel failed to cross-examine:**

**1.    Eric Thomas**

Petitioner raised trial counsel's alleged failure to cross-examine Eric Thomas in his amended state post-conviction petition.  (Add. 14, pp. 39-40)  According to the petitioner, Thomas not only identified Carlito Adams as his assailant in Adams' trial but also identified Derrick Garrin as his assailant in Garrin's trial.  Petitioner argued at his post-conviction action in state court that counsel should have cross-examined Thomas as to the Garrin identification.  The trial court heard the proof and denied relief resolving all factual determinations in the State's favor.

Because Eric Thomas did not testify at petitioner's post-conviction evidentiary hearing, the trial court denied relief, refusing to speculate as to what an "effectively cross-examined" Eric Thomas would say. (Add. 12, p. 74) The Court of Criminal Appeals affirmed the denial, noting that Mrs. Jones and other co-defendants identified petitioner as not only Thomas's shooter, but most importantly, as the person who shot Dawson. The court found no prejudice in the examination. (Add. 29, pp. 56-58) Petitioner fails to overcome the presumption of correctness that attaches to these factual determinations *See* 28 U.S.C. § 2254(e)(1).

## 2.    Mary Jones

Petitioner identified Mary Jones in his amended state petition as well. (Add. 14, p. 77) Ms. Jones, unlike Mr. Thomas, testified both at trial and at petitioner's post-conviction hearing. She testified consistently both times that petitioner was one of the shooters in the incident. The trial court found that her identification of the petitioner both at his criminal trial and subsequently upon post-conviction did not establish either the deficient performance or prejudice prong required to show that the failure to cross examine her effectively constituted ineffective assistance of counsel. Petitioner fails to overcome the presumption of correctness that attaches to these factual determinations *See* 28 U.S.C. § 2254(e)(1).

## 3.    FBI Agents

This averment challenges the alleged inconsistency between FBI Agent Bakken's

testimony at trial and Agent Landman's testimony in the suppression hearing regarding transportation of petitioner to the station house in Chicago where the agents took his statements. This collateral discrepancy, to the extent it could ever amount to a material subject of cross-examination was not explored in the direct appeal or in petitioner's state post-conviction action. (Add. 3, 5-6, 8, 12-14, 26, 28-30)  Petitioner therefore failed to exhaust this claim under 28 U.S.C. § 2254(b), and it is defaulted in this proceeding.

**C.     Trial counsel failed to have Eric Thomas's identification of the petitioner suppressed.**

Petitioner never raised this claim in his state post-conviction proceeding. (Add. 12-14, 26, 28-30) It is, therefore, procedurally defaulted in this proceeding.

**D.     Trial counsel failed to obtain and/or review and employ effectively the trial transcripts from the trials of co-defendants Derrick Garrin and Carlito Adams.**

Contrary to this averment in the state petition for post-conviction relief. Trial counsel did review the transcripts of prior trials. (Add. 13, v. 2, p. 56). According to the testimony presented at petitioner's post-conviction hearing, and the facts as found by the trial court, the petitioner was tried after the majority of his co-defendants,(Add. 12, p. 69) and trial counsel had the "entire state's file." (Add. 12, p. 69). *See Burns v. State,* 2005 WL 3504990, at 51. The petitioner cannot show that the state courts' resolution of the issue "was based on an unreasonable determination of the facts in light of the evidence presented" at petitioner's post-conviction evidentiary hearing. 28 U.S.C. § 2254(d)(2).

23

**E.     Trial counsel failed to suppress petitioner's own statements to the FBI.**

As for the petitioner's claim that counsel was ineffective by failing to exclude his allegedly coerced confession, petitioner failed to raise this claim in the state courts. (Add. 14, pp. 4, 29, 78)   Although petitioner challenged the admission of his confession at trial on grounds that it was the product of unconstitutional coercion, he has never raised the issue as a basis for ineffective assistance of counsel. Consequently, the claim is barred by procedural default.[2]

The post-conviction court reasonably determined petitioner's ineffective assistance claims in light of the evidence before it. As to those issues never raise in the state courts, petitioner is procedurally barred from federal court review.  Furthermore, inasmuch as petitioner suggests that there are additional errors of counsel "including but not limited to" those addressed here, this claim is inadequately pled for failure to set forth supporting facts, Habeas Rule 2(c).

**CLAIM 2: The state withheld material exculpatory evidence in violation of the Sixth, Eighth and Fourteenth Amendments. (Doc. No. 1-1, ¶ 20, Doc. 8, ¶¶ 96-107)**

**A. Documentary Evidence;**

Petitioner alleges that the State withheld the statements given by Tyrone Jones, Eric D. Jones, Mary Lee Jones identifying the potential suspects and (Doc. No. 8, ¶¶

---

[2] The trial court found: "Petitioner alleges that his conviction was based on the use of a coerced confession.  No proof was offered on this issue therefore the Court finds no merit."  (Add. 12, p. 63)

105.1-105.3) statements of Tommie Blackman, Benny Buckner, Kevin Shaw and Richard Morris, which suggest a different theory behind the shooting.  (Doc. No. 8, ¶¶ 105.4-105.7) In addition petitioner claims that the State suppressed documents allegedly confirming Shaw's and Buckner's possession of handguns and the return of certain handguns seized from Shaw and Buckner  to Shaw's father (Doc. No.8, ¶ 105.8); Derrick Garrin's Presentence Report allegedly substantiating petitioner's version of the events leading up to the shooting (Doc. No.8, ¶ 105.9); and indictments issued March 21, 1995, charging Benny Buckner with killing Dawson and Johnson (Doc. No. 8, ¶ 105.10).

### B. "Other Information"

Petitioner claims that the State withheld information which shows the absence of a robbery, the absence of the intent to commit a robbery on Burns's behalf, and the absence of any proof that Burns fired his weapon at the scene. (Doc. No. 8, ¶ 106) Petitioner argues that the State withheld evidence that showed that Buckner, Shaw, Garrin, and Adams shot Dawson.  Specifically, he argues that the State withheld evidence which shows that Dawson reached for a handgun before being shot and that the State cut a deal with Shaw, Buckner, and Morris in exchange for an incriminating fiction implicating petitioner.  Further, petitioner claims that the FBI fabricated statements and attributed them to the petitioner, while taking the petitioner's statement without informing him of his Fifth Amendment rights.

Petitioner's original post-conviction petition contained an omnibus allegation that

the prosecution failed to disclose "written and oral reports from prosecution interviews."

(Add. 14, p. 9) The first amended petition filed in state court contained the allegation

"Petitioner cannot at this time ascertain what he does not have."  (Add. 14, p. 44) After

the evidentiary hearing, the trial court entered its memorandum, which contains the

following findings:

> . . . Petitioner accuses the State of violating the defendant's right to
> discover exculpatory and impeachment evidence at the time of trial and
> continuing to the point of filing this amended petition.  There has been no
> proof presented of any failure by the State to grant full and proper
> discovery nor has there been any proof that there exist[s] or that the State
> has failed to disclose exculpatory or impeachment evidence. The Court
> understands the role of the Capital Defender's Office and the burden that
> it must bear.  However, a blanket accusation of unethical and illegal actions
> by the State with absolutely no proof to support such a statement is very
> disturbing to this Court.  This Court considers it unethical to accuse
> another attorney of unethical behavior and then put on absolutely no proof
> to substantiate such a charge.  The Petitioner has failed to carry his burden
> of proof as to the allegation and it has no merit.

 (Add. 7, v. I, pp. 80-81)

Petitioner did not challenge this finding on appeal from the post-conviction

evidentiary hearing.  (Add. 26, 28, 30)  Because petitioner failed to pursue appellate

review when it was available, his *Brady* claim is defaulted in this proceeding.

**CLAIM 3: The State asserted in petitioner's trial a position in apparent
contradiction to the State's theory in the trial of petitioner's co-defendant Derrick
Garrin; (Doc. No. 8, ¶¶ 108-114)  CLAIM 4: The State knowingly presented false
testimony from Eric Thomas indicating petitioner shot him and Damond Dawson
(Doc. No. 8, ¶¶ 115-120); and CLAIM 5: The State knowingly presented false
testimony from Eric Jones and Eric Thomas indicating that they saw persons
outside Dawson's car demanding money and jewelry immediately prior to the
shooting (Doc. No. 8, ¶¶ 121-125).**

The next three claims center, as well, on the alleged contradiction between Eric Thomas' testimony in Derrick Garrin's trial implicating Garrin, "the big fellow with the glasses" as the person who shot Thomas and Dawson, (¶ 109) and his identification of the petitioner from a photographic array in petitioner's trial. (¶¶ 112-114)  The Court of Criminal Appeals addressed all three claims in its opinion affirming the denial of post-conviction relief:

> The petitioner argues that the State denied him a fair trial by "the use of conflicting theories between the [petitioner's trial and co-defendant Garrin's trial] and the knowing use of perjured testimony." To support this claim, he inserted in his appellate brief charts containing excerpts from the testimony of Eric Thomas in the trials of the petitioner and of Derrick Garrin, asking that we "review" this testimony and conclude that it proves his claim.
>
> In our consideration, we first note that the petitioner was convicted of two counts of felony murder for the shooting deaths of Damond Dawson and Tracey Johnson, but his convictions for the attempted murders of Eric Thomas and Tommie Blackman were reversed, this court finding that attempted felony murder is not a criminal offense. Thus, it is unclear as to how the issue of inconsistent theories as to who shot Eric Thomas is relevant to the petitioner's convictions for the first degree murders of Damond Dawson and Tracey Johnson. The petitioner attempts to make this connection by arguing that "[t]he State wanted to show that the person on trial was the most culpable, and, therefore, the most deserving of the death penalty." However, he makes no references to the record to support this theory.
>
> In co-defendant Garrin's trial, according to the petitioner's chart, Eric Thomas testified that he was shot by "[t]he big fellow with the glasses," the petitioner asserting that "[t]he record in the case is clear that [sic] big fellow with glasses is Derrick Garrin." However, he does not identify where in the appellate record, which consists of transcripts of testimony in two boxes, the information establishing this clarity can be located.  Further, he

asserts that "[t]he record is clear, including from the statements of Adams and Shaw to the police, PC Exhibits 7 and 8, that Kevin Shaw was with Adams when Adams first approached the car." He does not explain how we can make this determination solely from the confusing statements of these witnesses. He makes no references to the record as to questioning trial counsel or any other witnesses as to why Eric Thomas was not cross-examined in the way he believes should have occurred.

Additionally, the petitioner claims on appeal that the Shelby County District Attorney's Office suborned the perjured testimony of Eric Thomas:

> This is the intentional use of perjured testimony. There can be no question that Eric Thomas' alternative descriptions of the person who shot him involved perjury. Nor can there be any question that the State's attorneys were aware of the perjury.

We disagree with the petitioner's claims that he has shown the State suborned perjury by Eric Thomas or even established that Thomas perjured himself. Again, we note that it is difficult for this court to review issues where, as here, we are referred broadly to documents and not to the specific portion which, he claims, supports his accusations of subornation of perjury. The statement of Kevin Shaw consists of six pages and, by our reading, does not support the petitioner's claims. As we understand the statement, Shaw said that, upon hearing two shots, without identifying who fired them, he turned and ran, as "Kevin and Derrick" apparently ran up to the car. Shaw said, "I ran down the street. I heard a whole lot of shots after that as I was running down the street." In his statement, Carlito Adams said that he and Shaw approached the driver's side of the vehicle occupied by the victims and both began running as shots were fired, the first shot being fired by the man wearing "the big black nylon 3/4 jacket."

The post-conviction court found that no proof had been presented as to the petitioner's conflicting theories claim and, thus, it was without merit:

> The next allegation by Petitioner is that the State's action denied him a fair trial and appeal. He first argues that the State had alternative theories of prosecution in the three separate trials. No proof has been presented as to contradictory theories by the [S]tate in the trial of the

28

co-defendants. The petitioner admitted he was present on the scene armed with a gun and that he fired his gun. The testimony presented was that 5 or 6 people participated in this killing. At least 4 or 5 of them were armed. Several were identified as firing shots into the car containing the victims. The petitioner was identified by several witnesses as being "a shooter." No alternative theories were offered by the State as to Petitioner's role based upon what proof was presented to this Court. Since no proof has been presented regarding alternative theories[,] this issue has no merit.

In his appellate brief, the petitioner has neither acknowledged nor addressed this specific finding, nor has he made any references to the transcript of the evidentiary hearing as to whether his trial counsel, or any other witnesses, agreed with his claim that the State pursued differing theories in the two prosecutions. We conclude that the record supports the findings of the post-conviction court.

*Burns v. State*,  2005 WL 3504990, *47-8 (Tenn. Crim. App. 2005) (Add. No. 10)

Petitioner fails to show that this determination is an "objectively unreasonable" determination of fact.  *Williams*, 529 U.S. at 409.

As for petitioner's Claim 5, the alleged presentation of perjured testimony suggesting robbery, petitioner raised no such claim in his state post-conviction petitions. (Add. 14, pp. 4, 29, 78) It is, thus, procedurally defaulted and should be dismissed.

**CLAIM 6: The photographic array from which Eric Thomas identified the petitioner was unduly suggestive. (Doc. No. 8, ¶¶ 126-129)**

Petitioner alleges that his photograph, unlike four of the remaining five photographs, showed a subject without facial hair while the only other picture was of "an excessively feminine" man.  (¶ 129) Petitioner also argues that the piece of tape underneath the photograph of petitioner and the cinder block background of the photo

unduly suggested that Thomas should pick that photograph.  Petitioner never raised this issue on direct appeal or in post-conviction proceedings. *State v. Burns*, 979 S.W.2d 276 (Tenn. 1998)(Add. 8);  *Burns v. State*, 2005 WL 3504990 (Tenn. Crim. App. 2005)(Add. 29) (*See also* Add. 26, 28)  Because petitioner failed to present his claim to the state courts, despite having an opportunity to do so, and is now procedurally barred from presenting it to a state court, the claim is procedurally defaulted and should be dismissed.

**CLAIM 7: The trial court admitted petitioner's statement taken in violation of his Fifth, Sixth and Eighth Amendment rights.  (Doc. No. 8, ¶¶ 130-135)**

Petitioner challenged the admissibility of his statements to FBI officers at trial and on direct appeal.  The Court of Criminal Appeals' opinion recounted the trial court's resolution of petitioner's motion to suppress at trial and affirmed it in all respects.

> The defendant next complains that the trial court erred when it denied his motion to suppress his statement.  The defendant was apprehended in Chicago by FBI agents.  He testified at the suppression hearing that he had been read his rights when he was first arrested and handcuffed.  He also testified that he had understood his rights before making his statement, that he had not been promised anything in return for his statement, and that he had not been threatened into making his statement.  However, when asked at the suppression hearing, "you knew you didn't have to talk to [the agent]?", the defendant responded, "I didn't really understand, but I did because he was asking me questions."  This is the crux of the defendant's contention that he did not waive his constitutional rights freely and voluntarily.
>
> It is the duty of the trial judge to determine the voluntariness and the admissibility of a defendant's pre-trial statement.  *State v. Pursley,* 550 S.W.2d 949, 952 (Tenn. 1977).  Moreover, the trial court's determination that a confession was given knowingly and voluntarily is binding on the

appellate courts unless the appellant can show that the evidence preponderates against the trial court's ruling. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). In the instant case, the defendant has failed to demonstrate how the evidence preponderates against the trial court's ruling.

At the conclusion of the testimony at the suppression hearing, the trial court stated the following:

> The defendant says the person that handcuffed him gave him his rights on the scene — he didn't read them from a card, but he said them to him. He said he understood his rights. He doesn't remember all of them, but he knows that he was advised, 'You have a right to remain silent and anything you say can and will be used against you.'
>
> He doesn't recall the one about right to counsel, as is complained of in the motion; but he, too, does not deny that he was not [sic] told this. He admits, freely, that he was advised of his rights when he was initially handcuffed. Through his own statement, he was advised of his rights; he understood them; he's a high-school graduate; he was not coerced; he was not pressured; he was not threatened; nobody promised him anything.
>
> * * *
>
> But from what the court has . . . seen here, it would appear that, on all fours, the defendant freely and voluntarily, understandingly, knowingly, advisedly, and intelligently waived his rights free from any coercion, threats, pressures of any kind that would have induced him or caused him to have abandoned his rights.
>
> He claims he understood them, and from his testimony, the court would have to find that even if his recall is more accurate than that of Agent Landman, through his own evidence, the statement that is purportedly given by the defendant to Agent Landman would be admissible into evidence. The motion to suppress, respectfully, will be denied.

31

This ruling by the trial court was proper.  Although he claims in his brief that he "did not understand his rights," the defendant admitted during the suppression hearing that he had understood the waiver form and that he had freely and voluntarily talked to the agents.  There is nothing before this Court which preponderates against the trial court's findings. Accordingly, this issue is without merit.

*State v. Burns*,  1997 WL 418492, at 7-8

Petitioner challenged the use of his confession at trial as a Fifth Amendment claim. The post-conviction petition alleged the Sixth Amendment violation of a right to counsel. There was no challenge based on the Eighth Amendment prohibition against cruel and unusual punishment. (Add. 5, 8, 12, 14, 26, 28-30.)  Petitioner therefore has failed to exhaust the Eighth Amendment claim and the same is procedurally barred in this proceeding.  Petitioner fails to show that the state court's determination as to his Fifth and Sixth Amendment claims on direct appeal is "contrary to" or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1), *Williams*, 529 U.S. at 407, or is otherwise "objectively unreasonable."  *Williams,* 529 U.S. at 409.  Relief should be denied.

**CLAIM 8: In the suppression hearing concerning petitioner's statement, the State presented false testimony from F.B.I. Agents Landman, Bakken and Harbaugh, in violation of  the Sixth, Eighth and Fourteenth Amendments. (Doc. No. 8, ¶¶ 136-140.)**

Petitioner failed to raise this issue on direct appeal or in post-conviction. (Add. 6, 9, 14, 26, 28) Because petitioner failed to raise this claim in state court and is now procedurally barred from doing so, this claim is procedurally defaulted and should be

dismissed.

**CLAIM 9: In violation of the Sixth, Eighth and Fourteenth Amendments, the trial judge gave unconstitutional or otherwise improper jury instructions at the guilt stage of petitioner's trial. (Doc. No. 1-1, ¶19, Doc. No. 8,¶¶141-148)**

This claim attacks the trial judge's instructions concerning the statutory offense of felony murder and the necessary culpable mental state under Tennessee state law. Tenn. Code Ann. § 39-13-202(b). (Doc. No. 8, ¶¶ 141-142) Petitioner never raised this issue on direct appeal or post-conviction. (Add. 6, 9, 14, 26, 28) Because petitioner failed to raise this claim in state court and is now procedurally barred from doing so, this claim is procedurally defaulted and should be dismissed.

**CLAIM 10: In violation of the Sixth, Eighth and Fourteenth Amendments, extraneous improper influences affected the jury's verdict. (Doc. No.1-1, ¶ 25, Doc. 8, ¶¶ 144-148)**

Petitioner claims that the juror foreman read from a Bible to influence a 'hold-out' juror (Doc. 8, ¶¶ 144-146) and that jurors read from Bibles in the jury room and engaged in group prayer in the process of reaching its verdicts as to guilt and sentencing (Doc. No. 8, ¶¶ 147-148)

Petitioner litigated this issue in his post-conviction action in state courtas a violation of due process under the Sixth Eigth and Fourteenth Amendments. (Add. 12, 14, pp. 78-79) The second amended petition for post-conviction relief alleged that the jury consulted Bibles in considering guilt and sentence, that the juror foreman had used the Bible to improperly persuade a juror to vote for the death penalty and that the jury

33

engaged in "group prayer during deliberations." (Add. 14, p. 2) The trial court denied

relief and the petitioner appealed.  The Court of Criminal Appeals resolved the matter

thus:

> In issuing its order denying relief, the post-conviction court found that the "reciting" of a Bible verse was not prejudicial to the petitioner:

>> This court does not believe that asking for divine intervention and comfort from God during the deliberation process is what was meant or intended as outside influence. We ask jurors to make life and death decisions and many jurors look to God for guidance in their everyday life and the daily decisions, which they face.  This Court fails to see how asking God to help a juror make the right decision violates [the petitioner's] right to a fair trial.  Frankly, this Court takes great comfort in the fact that before a jury would make such a monumental decision that they would seek guidance from God.

> Tennessee Rule of Evidence 606(b) limits the circumstances under which jurors may be questioned about their deliberations:

>> (b) Inquiry Into Validity of Verdict or Indictment.  Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

The commentary to this rule sets out the circumstances to which this subsection is applicable:

After verdict, part (b) would come into play. A juror may testify or submit an affidavit in connection with a motion for new trial, but only in the limited circumstances of:

> (1) "extraneous prejudicial information" finding its way into the jury room,
>
> (2) improper outside pressure on a juror, or
>
> (3) a quotient or gambling verdict.

In sum, the pertinent part of Tennessee Rule of Evidence 606(b) provides that a juror may not testify "to the effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict," but is allowed to testify "whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror . . ." Tenn. R. Evid. 606(b).  In *Walsh,* 166 S.W.3d at 646-47, the Tennessee Supreme Court addressed the application of Rule 606 in a case where a juror testified about the mental and emotional effects of a deputy's statement to the juror during deliberations that she "had to" make a decision.  The court concluded that Rule "606(b) permits juror testimony to establish the fact of extraneous information or improper influence on the juror; however, juror testimony concerning the effect of such information or influence on the juror's deliberative processes is inadmissible."  *Id.* at 649.

Additionally, according to *Walsh,* once the petitioner proves "a juror was exposed to extraneous prejudicial information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the State to explain the conduct or demonstrate that it was harmless."  *Id.* at 647 (*citing State v. Blackwell,* 664 S.W.2d 686, 689 (Tenn.1984)).

As we will explain, we conclude, as did the post-conviction court, that the petitioner failed to establish that the jury at his trial was exposed to extraneous prejudicial information.  While Davis responded "[e]very day,"

35

when asked if he had a Bible with him in the jury room during deliberations, he was not asked if he displayed the Bible to the other jurors or whether they even were aware that he possessed it. Likewise, although he said that he "believe [d] [he] recited" only one Bible verse, he described it as "[t]hat was in Isaiah . . . I wouldn't know the verse, chapter or the verse. I just know what it says," and was not asked if his knowledge of the verse was more precise at the time of the jury deliberations. Additionally, although saying that he "recited" the verse, he was not asked whether he had read the verse from his Bible, quoted it verbatim, paraphrased it, simply gave the gist of it, or whether he even had identified the verse as being from the Bible. Thus, we conclude that the petitioner has failed to make an initial showing that, in the language of Rule 606(b), "extraneous prejudicial information was improperly brought to the jury's attention" so as to create a rebuttable presumption of prejudice and shift the burden to the State "to explain the conduct or demonstrate that it was harmless." *See Walsh,* 166 S.W.3d at 647. Accordingly, the additional questions asked Davis, which the petitioner claims show that the jury improperly considered the verdict during the guilt phase of the trial, were properly disallowed by the court as not being permitted by Rule 606(b).

*Burns v. State,* 2005 WL 3504990, at 44-46 (Tenn. Crim. App. 2005)(Add. 29, pp. 46-49)

In its opinion, the Court of Criminal Appeals applied Tenn. R. Evid. 606(b) to restrict the petitioner's inquiry into the conduct of deliberations in the jury room. Derived from the federal rule as adopted by the Tennessee Supreme Court in *State v. Blackwell,* 664 S.W.2d 686 (1984), this rule is "grounded in the common-law rule against admission of jury testimony to impeach a verdict." *See Tanner v. United States,* 483 U.S. 107, 121, 107 S.Ct. 2739, 2748 (1987). With the inquiry thus restricted, the court concluded that the petitioner failed to show extraneous influence. The factual finding of no extraneous influence is presumed correct unless rebutted by clear and convincing

36

evidence.

The proof adduced in the post-conviction hearing made no mention of "group prayer" or the presence of any more than the foreman's personal Bible in the jury room. (Add. 13, v.3, pp. 405-419) While initially pleaded in the second amended petition in state court, the allegation that group prayer and use of Bibles were extraneous influences on petitioner's jury was not preserved on appeal from the post-conviction evidentiary hearing. The claim concerning group prayer and use of Bibles, therefore, was not appropriately exhausted pursuant to 28 U.S.C. § 2254(b), and is now procedurally defaulted in this court.

**CLAIM 11: In violation of the Sixth, Eighth and Fourteenth Amendments, trial counsel rendered ineffective assistance at the sentencing phase of petitioner's trial. (Doc. No. 1-1, ¶ 21, Doc. No. 8,¶¶ 149-256)**

Petitioner asserts that he received ineffective assistance of counsel at the sentencing phase or his trial because of counsel's: (a) failure to present a challenge to the "great risk of death" aggravator (¶¶ 151-153); (b) failure to investigate and present mitigating evidence relevant to the circumstances of the crime (¶¶ 154-155); and (c) failure to investigate and present evidence of the petitioner's background and character. (¶¶ 156-256) In addition, the petitioner argues that trial counsel failed to present evidence of Burns's culpability as it related to other participants, charged and uncharged.

**A. Counsel's failure to investigate as alleged in petitioner's claim 1(A) prevented the discovery and presentation of evidence showing that petitioner was not responsible for the harm threatened against other witnesses and bystanders.(¶153)**

To the extent this allegation relies on petitioner's averments in Claim 1(A), the claim should be denied for the same reasons and under the same authorities cited in respondent's answer thereto, *supra* at Claim 1(A). The trial court found that trial counsel conducted a suitable investigation into the circumstances surrounding the incident. (Add. 12, p. 64.) The Court of Criminal Appeals held that the finding was based on the testimony of petitioner's counsel. *Burns v. State,* 2005 WL 3504990, *56-7 (Add. 29, pp.60-61). The petitioner cannot show that the state courts' resolution of the issue "was based on an unreasonable determination of the facts in light of the evidence presented" at petitioner's post-conviction evidentiary hearing. 28 U.S.C. § 2254(d)(2).

The trial court and appellate court determined that petitioner failed to show evidence clearly and convincingly establishing either deficient performance or prejudice as required under *Strickland*. *Burns v. State,* 2005 WL 3504990, at 48, 56-7 (Add. 29, pp. 51, 60-61) Petitioner cannot show that the state court's denial of relief as to this claim is "contrary to" or an unreasonable application of" established Supreme Court precedent. 28 U.S.C. § 2254(d)(2). *Williams,* 529 U.S. at 407. Relief should be denied.

**B.    Counsel's failure to investigate prevented the presentation of evidence showing:**

**1.  Burns did not shoot Dawson**

38

To the extent this allegation relies on petitioner's averments in Claim 1(A), the claim should be denied for the same reasons and under the same authorities cited in respondent's answer thereto, *supra* at Claim 1(A). Petitioner raised this claim in state court. The trial court found that trial counsel conducted a suitable investigation into the circumstances surrounding the incident. (Add. 12, p. 64.) The Court of Criminal Appeals held that the finding was based on the testimony of petitioner's counsel and the conflicting testimony regarding petitioner's appearance at the time the crime was committed. *Burns v. State,* 2005 WL 3504990, at 56-7 (Add. 29, pp. 60-61). The petitioner cannot show that the state courts' resolution of the issue "was based on an unreasonable determination of the facts in light of the evidence presented" at petitioner's post-conviction evidentiary hearing. 28 U.S.C. § 2254(d)(2).

## 2. Showing petitioner's background and character

Petitioner challenged counsel's inability to create a good working relationship with petitioner's mother in his state post-conviction action. The trial court heard volumes of proof of petitioner's home life, the chaos that was his mother's family and his uncharacteristically good behavior despite his difficult upbringing. The trial court specifically found that this proof did not constitute any new evidence which would have swayed the jury. (Add. 12, pp. 67-68) The Court of Criminal Appeals affirmed that finding:

> On appeal, the petitioner asserts that "[f]ailure to conduct even a rudimentary investigation in this case denied [the petitioner] his right to

the effective assistance of counsel." According to the petitioner, "much of the problem in this case was related to the total lack of understanding of mitigation by defense counsel." To bolster this allegation, he points to his claims that "Obra Carter abused the women in his life and his children," and "Leslie Burns . . . had significant deficiencies as a parent." Pointing to the findings of Drs. Norton, Woods, Kertay, and Auble, we are directed to "various symptomologies" of the petitioner, including "traumatic stress, genetic vulnerabilities and environmental issues."

The post-conviction court found this claim to be without merit:

> [O]n trial preparation, petitioner alleges failure to prepare proper mitigation. The defense strategy in this case was that the petitioner was a good person and this activity was out of character for him. . . [T]rial counsel testified that a large part of their case was based upon the petitioner testifying. He had indicated throughout pretrial that he would testify. Yet at trial he decided not to. Although this is petitioner's right, it is also another example of his failure to cooperate with his attorneys by advising them of this decisions [sic] in advance. This court heard a full week's worth of testimony from mitigation witnesses; family, friends, teachers, a sociologist/mitigation expert and a neuro-psychiatrist . . . [T]he proof presented showed that this was a well-adjusted young man who committed a crime that was out of character for him. After listening to all of the mitigation proof . . . this court heard nothing about the petitioner that offered any better insight into why this crime occurred or why the petitioner chose to act the way he did on the day in question. The bulk of the mitigation proof dealt with the petitioner's father. There was no proof offered . . . that his upbringing played any role in the commission of this offense. If anything it showed that the petitioner had overcome adversity and survived, leading to a conclusion that this crime was out of character . . . [T]his Court does not feel that the petitioner has carried his burden of proof that the mitigation presented during this hearing would have changed the verdict rendered by the jury . . .

Regarding the penalty phase, the proof established, under the testimony of

> Thomas and Jones, that the petitioner shot into a vehicle, creating a great
> risk of death.   According to the petitioner's FBI statement, he shot at
> Blackman, admitting that three children were in his line of fire.  This
> statement also supports application of the factor of creating a great risk of
> death to two or more persons other than the victim.  Under either theory,
> the aggravating circumstance is still established.  The petitioner cannot
> establish that his sentence would have been different.  The record supports
> the determination of the post-conviction court that this claim is without
> merit.

*Burns v. State,* 2005 WL 3504990, *58 (Tenn. Crim. App. 2005)

Petitioner has failed t show that the state courts' determination  is "contrary to"
or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1) or is
otherwise "objectively unreasonable."  *Williams*, 529 U.S. at 407-09.  Relief should be
denied.

### 3.  Mental health mitigation factors

Petitioner litigated this issue in his state post-conviction action.  Original trial
counsel testified to taking petitioner's personal history in an effort to develop avenues
of mitigation proof.  (Add. 29, p. 4) Petitioner's responses to questions and to an
evaluation given for the purpose by Midtown Mental Health Center gave no indication
of developmental disability or any other mental health issues.  The trial court found no
ineffective assistance of counsel and the appellate court affirmed that finding.  *Burns v.
State,* 2005 WL 3504990, at 62-69 (Add. 29, p. 66-73).  In affirming the trial court, the
Court of Criminal Appeals, after noting the unquestionable relevance of background,
character and emotional condition in the capital context, *See Burns v. State,* 2005 WL

3504990, at 62 (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837 (1987),

noted the following:

> The right that capital defendants have to present a vast array of personal information in mitigation at the sentencing phase, however, is constitutionally distinct from the question of whether counsel's choice of what information to present to the jury was professionally reasonable.
>
> There is no constitutional imperative, however, that counsel must offer mitigation evidence at the penalty phase of a capital trial. Nonetheless, the basic concerns of counsel during a capital sentencing proceeding are to neutralize the aggravating circumstances advanced by the State and to present mitigating evidence on behalf of the defendant. Although there is no requirement to present mitigating evidence, counsel does have the duty to investigate and prepare for both the guilt and the penalty phase. *See Goad v. State,* 938 S.W.2d 363, 369-70 (Tenn. 1996).
>
> To ascertain whether trial counsel was ineffective by not presenting mitigating evidence, the reviewing court must consider several factors. First, the court must analyze the nature and extent of the mitigating evidence that was available but not presented. *Goad,* 938 S.W.2d at 371 (*citing Deutscher v. Whitley,* 946 F.2d 1443 (9th Cir. 1991); *Adkins v. State,* 911 S.W.2d 334 (Tenn. Crim. App. 1994)). Second, the court must determine whether substantially similar mitigating evidence was presented to the jury in either the guilt or penalty phase of the proceedings. *Id.* (*citing Atkins v. Singletary,* 965 F.2d 952 (11th Cir.1992); *State v. Melson,* 722 S.W.2d 417, 421 (Tenn. 1989)). Third, the court must consider whether there was such strong evidence of applicable aggravating factor(s) that the mitigating evidence would not have affected the jury's determination. *Id.* (*citing Fitzgerald v. Thompson,* 943 F.2d 463, 470 (4th Cir. 1991)). Thus, to determine whether the petitioner has carried his burden of showing that there is a reasonable probability that at least one juror would have declined to impose a sentence of death if presented with certain mitigation evidence, we must "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith,* 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).

*Burns v. State*, 2005 WL 3504990, *63 (Add. 29, pp. 66-67). After considering the

entire record, the Court of Criminal Appeals concluded that counsel's decision not to retain mental health experts in mitigation "were reasonable considering the information amassed by counsel through their investigation." *Burns v. State*, 2005 WL 3504990, *68 (Add. 29, p. 72) The appellate court specifically noted "that this is not a case in which counsel failed to conduct any inquiry into the accused's background and social history." *Burns v. State*, 2005 WL 3504990, at 67(citing *Williams v. Taylor,* 529 U.S. 362, 3976, 120 S.Ct. 1495 (2000)).  Petitioner fails to show that the state courts' determination is "contrary to" or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1) or is otherwise "objectively unreasonable."  *Williams*, 529 U.S. at 407-09. Relief should be denied.

**CLAIM 12:  In violation of  the Sixth, Eighth and Fourteenth Amendments, the State presented victim impact testimony at the sentencing hearing. (Doc. No. 1-1, ¶ 8, Doc. No. 8, ¶¶ 257-259)**

Petitioner makes no reference in his petition to the well-settled admissibility of victim impact evidence at the sentencing phase of a death eligible defendant's trial.  See *Payne v. Tennessee,* 501 U.S. 808, (1991).  This claim attempts to relitigate the admissibility of the victims' mothers' testimony with specific reference to Damond Dawson's worth as a football player, (¶¶ 2581.1-3), the  effect of the killings on the neighborhood, (¶ 258.1.4), and both victims' ability to provide for their respective families.  (¶¶ 258.1.3; 258.2.1-2) Petitioner raised this claim on direct appeal.  The Tennessee Supreme Court denied relief:

In *State v. Nesbit,* 978 S.W.2d 872 (Tenn. 1998), we recently held that victim impact evidence and argument is not *per se* improper under either statutory or constitutional law.  Our analysis of the sentencing statutes began with Tenn. Code Ann. § 39-13-204(c) . . .

This statute delineates a procedure which enables the sentencing jury to be informed about the presence of statutory aggravating circumstances, the presence of mitigating circumstances, and the nature and circumstances of the crime.  As we said in *Nesbit,* "the impact of the crime on the victim's immediate family is one of those myriad factors encompassed within the statutory language 'nature and circumstances of the crime.'" 978 S.W.2d at 889.  The statute, therefore, allows the sentencing jury to be reminded that "just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family."  *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991).

We also, in *Nesbit,* recognized that the United States Supreme Court has held that Eighth Amendment to the United States Constitution does not constitute a *per se* bar to the admission of victim impact evidence and argument.  *Nesbit,* 978 S.W.2d at 889 (quoting *Payne,* 501 U.S. at 825, 111 S.Ct. at 2608).  Our recent decisions have followed Payne and have held that victim impact evidence and argument is likewise not precluded by the Tennessee Constitution. *E.g., Nesbit,* 978 S.W.2d at 889.

Not all victim impact evidence and argument, however, is appropriate.  It should be limited to "information designed to show those unique characteristics which provide a brief glimpse into the life of the individual who has been killed, the contemporaneous and prospective circumstances surrounding the individual's death, and how those circumstances financially, emotionally, psychologically or physically impacted upon members of the victim's family." *Id.* at 891 (citing *Payne,* 501 U.S. at 822, 111 S.Ct. at 2607) (footnote omitted).

Moreover, any evidence that threatens to render the trial fundamentally unfair or poses a risk of unfair prejudice may violate the due process provisions of the United States and Tennessee Constitutions and must be excluded.  *Id.*  The trial court should also exclude any evidence where its probative value is substantially outweighed by its unfair prejudice.  Tenn. R. Evid. 403.  Finally, the prosecutor and the trial court should ensure that

the prosecution's argument is restrained and reasoned, fairly based on the evidence, and not merely an appeal to the bias or emotional responses of the jury. *Nesbit,* 978 S.W.2d at 891.

Here, the victims' mothers testified during the penalty phase. Each related a few details about their deceased sons. Ms. Dawson testified that the shootings had a negative effect on her own life: she had divorced, moved to another house, and no longer knew what it was like to feel happy. Johnson's mother, Ms. Hudson, testified that "it had been hard to let go" of the killings, and she cried every day. She also testified that the killing affected her other two children, her father, and the victim's young daughter.

Although evidence regarding the emotional impact of the murder "should be most closely scrutinized," *Nesbit,* 978 S.W.2d at 891, nearly all of this evidence was limited in scope to a glimpse into the lives of Dawson and Johnson and the effects of the killings on their immediate families. This testimony was reserved in nature and not inflammatory, and its admission was not barred by the capital sentencing statutes or the Constitutions of the United States and Tennessee. Moreover, the prosecutor did not extensively discuss or emphasize this evidence in summation. Accordingly, neither the admission of this evidence nor the prosecution's argument was improper.

*State v. Burns,* 979 S.W.2d 276, 281-283 (Tenn. 1998)(internal quotations redacted.)

The Supreme Court applied the correct standard and determined that the use of these three avenues of testimony did not render the proceedings fundamentally unfair or unduly prejudicial to the petitioner. *Burns,* 979 S.W.2d at 283 Petitioner fails to show that the state courts' consideration of victrim mpact testimony in sentencing is "contrary to" or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1) or is otherwise "objectively unreasonable." *Williams*, 529 U.S. at 409. Relief should be denied.

**CLAIM 13: The trial judge gave constitutionally impermissible jury instructions at the sentencing phase.  (Doc. No. 8, ¶¶ 260-261.3)**

Petitioner claims that the court's instructions required the finding of aggravating circumstances to a "moral certainty" and prohibited the consideration of "possible doubts," and that these requirements relieved the prosecution's burden of proving those circumstances beyond a reasonable doubt.  (¶ 261.1) Petitioner also claims that the sentencing phase instruction as to the knowing element of the aggravating circumstance unconstitutionally incorporated a definition of "knowing" from the guilt phase of trial, which only required "awareness of circumstances" rather than knowledge of creating a great risk of death.  Petitioner draws a distinction between the "knowledge's of petitioner's actions" and the "knowledge of the effect of those actions."  (¶ 261.2) Petitioner likewise claims that the trial court limited the jury in sentencing to considering only mitigation "favorable" to the defendant.  Petitioner never presented these claims to the state courts, either on direct appeal or during post-conviction proceedings.  (Add. 4-9, 12-15, 26-32) Specifically, he failed to object to the alleged improper instructions at trial, failed to raise the issues in his motion for new trial, and failed to raise them on appeal to the Tennessee Supreme Court. (Add. 6) Consequently, the claims are procedurally defaulted and should be dismissed.

**CLAIM 14: The prosecution made improper remarks during closing argument at the sentencing stage by stating "You know what your duty before God is." (Doc. No. 8, ¶¶ 262-263)**

Petitioner never presented this claim in any state court, either on direct appeal or

during post-conviction proceedings. (Add. 4-9, 12-15, 26-32) Consequently, it is procedurally barred and should be dismissed.

**CLAIM 15: The trial court refused to answer questions posed by the jury during sentencing deliberations. (Doc. No. 8, ¶¶ 264-66)**

Petitioner contends that the court's refusal to address the following questions from the jury amounted to constitutional error: "How Many Years for life? What does a life sentence mean? Can we ask for life without parole? Can we stipulate life plus so many years? Can we ask for consecutive life sentences? And What does it mean if you're sentenced to death and life?"

Although petitioner raised this claim on direct appeal, the Tennessee appellate courts concluded he had waived the claim by failing to object to the trial court's response at trial. Nevertheless, the opinion of the Court of Criminal Appeals, as annexed in the later Tennessee Supreme Court opinion, explains the default as follows:

> In his next issue, the defendant asserts that the trial court erred in its response to the jury when the jury asked certain questions during its deliberations in the penalty phase of the trial. Those questions propounded by the jury to the trial court were as follows:
>
> (1) How many years for life?
>
> (2) What does 'life sentence' mean?
>
> (3) Can we ask for life without parole? Can we stipulate life plus so many years?
>
> (4) Can we ask for consecutive life sentences?
>
> (5) What does it mean if you're sentenced to death and life?

In response to these questions, the trial court stated, "All right.  You're directed to refer to the charges and instructions that are contained in the jacket.  Thank you.  You may retire to continue your deliberations."  The defendant contends that the questions posed indicated that the jury was considering improper matters, and that the trial court "should have directed the jury that the questions posed were not proper considerations in the determination of the sentence."  The defendant concedes that there is no authority for the requirement that the trial court give this direction prior to referring the jury to the charge and instructions given initially. The State responds, first, that this issue is waived because the defendant did not object to the trial court's response to the jury's questions at the time it was given, and second, that the trial court's response was proper and that this issue is therefore without merit even if we should consider it.

We agree with the State on both counts.  As a general rule, "[a] party cannot witness misconduct on the part of the court, await the result of the verdict, and then, if it is against him or her, object to the alleged misconduct."  *State v. Tune,* 872 S.W.2d 922, 930 (Tenn. Cr. App. 1993). The trial court in this case took the questions from the jury after recalling counsel, the defendant, the court reporter and the jury back into open court in order to take the matter up on the record.  Thus, defense counsel had every opportunity to object at the time the trial court gave its response. Defense counsel chose not to do so.  The defendant will not now be heard to complain.  *See* T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.")

*State v. Burns,* 979 S.W.2d 276, 295 -296 (Tenn. 1998)(Add. 8)

The Tennessee Supreme Court determined the claim to be waived due to petitioner's failure to object to the trial court's refusal to answer.  Petitioner's failure to comply with established state procedural rules for preserving claims for appellate review results in the procedural default of this claim, which should be dismissed.

**CLAIM 16: In violation of the Sixth, Eighth and Fourteenth Amendments, women were systematically excluded from the position of grand jury foreperson on the grand jury that indicted petitioner. (Doc. 8, ¶¶ 267-272)**

Petitioner never raised this issue on direct appeal or in post-conviction. (Add. 4-9, 12-15, 26-32) Because petitioner failed to pursue direct or collateral review when it was available in state court, he failed to properly exhaust this claim under 28 U.S.C. § 2254(b), the claim is procedurally defaulted in this proceeding. Petitioner's failure to comply with established state procedural rules for preserving claims for appellate review results in the procedural default of this claim, which should be dismissed.

**CLAIM 17: The indictments against Burns did not allege aggravating circumstances. (Doc. No. 8, ¶¶ 273-4)**

Petitioner asserts that his sentence was imposed by the state court in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment right, in light of the Supreme Court's rulings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). The United States Supreme Court has never announced a federal constitutional requirement that States charge in an indictment aggravating factors to be relied upon during sentencing in a first-degree murder prosecution. To the contrary, it has been long established that the federal right to presentment or indictment by a Grand Jury does not extend to the States through the Fourteenth Amendment. *Hurtado v. California*, 110 U.S. 516 (1884). To grant petitioner relief would thus constitute the use of federal habeas corpus to announce a new rule of constitutional criminal law/procedure, a result prohibited by *Teague v. Lane*, 489 U.S. 288 (1989), *Saffle v. Parks*, 494 U.S. 484,

49

494-95 (1990).

Moreover, petitioner raised this challenge in his post-conviction petition in state court in the form of a due process claim. The Court of Criminal Appeals resolved the claim thus:

> The petitioner next asserts that his being sentenced to death violates the Due Process Clause, Article I, § 8 of the Tennessee Constitution and the Fourteenth Amendment to the United States Constitution. Relying upon *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), he argues that his indictment was flawed because the aggravating circumstances which made him eligible for the death penalty were not submitted to the grand jury nor returned in the indictment.
>
> The petitioner's argument is based upon the premise that first degree murder is not a capital offense unless accompanied by aggravating factors. Thus, he alleges that to satisfy the requirements of *Apprendi,* the indictment must include language of the statutory aggravating circumstances to elevate the offense to capital murder. This argument has recently been rejected by our supreme court in *State v. Holton,* 126 S.W.3d 845 (Tenn. 2004); *see also State v. Berry,* 141 S.W.3d 549, 558-562 (Tenn. 2004) (concluding also that the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), does not alter the court's analysis on whether statutory aggravating circumstances must be pled in the indictment). The petitioner is not entitled to relief on this issue.

*Burns v. State,* 2005 WL 3504990, at 70 (Tenn. Crim. App. 2005)

Petitioner fails to show that the state courts' determination is "contrary to" or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1); *Williams,* 529 U.S. at 407, or otherwise "objectively unreasonable." *Williams,* 529 U.S. at 409. Relief should be denied. Further to the extent that petitioner alleges any other constitutional basis for his claim beyond that specifically presented in the Tennessee

state courts, his claim is procedurally defaulted and should be dismissed.

**CLAIM 18: Petitioner's death sentence violates his "fundamental right to life" and due process.  (Doc. No. 8, ¶¶ 275-78)**

Prior to trial, petitioner's initial counsel had secured a plea bargain offer of life imprisonment. Petitioner claims that by offering life, the state demonstrated that a means less serious than death was available to vindicate the state's interest and that by seeking capital punishment at trial, the state unduly burdened Petitioner's right to due process, forcing petitioner into a Hobson's choice — go to trial with the possibility of death penalty, or plead guilty and receive life imprisonment. (¶ 277) Petitioner failed to raise this claim on direct appeal. (Add. 12, v. 2, p. 125) Pursuant to Tenn. Code Ann. § 40-30-102(g), the claim should have been considered waived for failure to raise at the earliest opportunity. Nevertheless, the post-conviction court went to the merits of the allegation of ineffective assistance of appellate counsel and found that the issue lacked merit. (Add. 12, v. 1, p. 79) The Court of Criminal Appeals affirmed.

> The petitioner contends that his sentence of death should be set aside because it infringes upon his fundamental right to life.  In support of this position, he asserts that the punishment of death is not necessary to promote any compelling state interest in punishing him and that the State has not shown there are no less restrictive means of punishing him.  The petitioner's complaint that his death sentence must be reversed because it violates his "fundamental right to life" is contrary to settled precedent as reflected in *Cauthern,* 145 S.W.3d at 629 (citing *Nichols,* 90 S.W.3d at 604; *State v. Mann,* 959 S.W.2d 503, 536 (Tenn. 1997) (Appendix); *State v. Bush,* 942 S.W.2d 489, 523 (Tenn. 1997)). Accordingly, this argument is without merit.

*Burns v. State,*  2005 WL 3504990, at 70.

Petitioner's failure to comply with established state procedural rules for preserving claims for appellate review results in the procedural default of this claim. Notwithstanding the procedural default, the decision of the state court is neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court and, thus, does not warrant relief. 28 U.S.C. § 2254(d)(1).

> "[C]apital punishment is an expression of society's moral outrage at particularly offensive conduct. This function may be unappealing to many, but it is essential in an ordered society that asks its citizens to rely on legal processes rather than self help to vindicate their wrongs."

*Gregg v. Georgia*, 428 U.S. 153, 183 (1976)

**CLAIM 19:  The absence of uniform standards guiding prosecutors, including the prosecutor in petitioner's case, in deciding whether to seek a capital sentence violates the Sixth, Eighth and Fourteenth Amendments.  (Doc. No. 8, ¶¶ 279-281)**

Petitioner specifically complains about the failure to charge Kevin Shaw, Benny Buckner and Richard Morissee. (¶ 281) This claim is without merit.  The Court of Criminal Appeals opinion includes the following enlightening discussion:

> The petitioner contends that the imposition of the death penalty violates both the state and federal constitutions because the statute grants absolute discretion to each individual district attorney general to indiscriminately seek the death penalty.  The petitioner concedes that this issue was raised and rejected on direct appeal as part of a general challenge to the Tennessee death penalty statute.  *See Burns,* 979 S.W.2d at 297.  Our supreme court has not altered its opinion and has continued to reject this claim since the petitioner's direct appeal.  *See, e.g., State v. Thomas,* 158 S.W.3d 361, 407 (Tenn. 2005).  Notwithstanding, the petitioner asserts that the issue should be reconsidered in light of the principles set forth in *Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000).  The

petitioner asserts that the prosecutorial function is analogous to a state court's issuance of a remedy and implies a duty to ensure that prosecution of crimes is implemented fairly.

The petitioner's claim fails for numerous reasons. First, the opinion in *Bush* was not released until 2000, two years after our supreme court's affirmance of the petitioner's convictions and death sentence. Thus, *Bush* is inapplicable to the petitioner's case unless the holding established a new rule of law which is to be applied retroactively.

In *Bush,* the United States Supreme Court held that when a state court orders a remedy, such as a recount of votes, there must be some assurance the implementation of the remedy will comport with "the rudimentary requirements of equal treatment and fundamental fairness...." *Id.* at 109, 121 S.Ct. at 532. The potential sweep of the Supreme Court's holding is limited by the opinion's own words: "Our consideration is limited to the present circumstances . . ." *Id.* Thus, we decline the invitation to conclude that *Bush* established a new rule of constitutional criminal procedure. *Bush,* a voting rights case, does not apply to this criminal prosecution. *See generally Black v. Bell,* 181 F.Supp.2d 832, 879 (M.D.Tenn. 2001). Moreover, the petitioner's claim, on its merits, has been rejected on numerous occasions. The United States Supreme Court has refused to strike down various death penalty statutes on the ground that those statutes grant prosecutors discretion in determining whether to the seek the death penalty. *Gregg v. Georgia,* 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976) (The petitioner's argument "that the state prosecutor has unfettered authority to select those persons whom he wishes to prosecute for a capital offense" does not indicate that system is unconstitutional.); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 2967, 49 L.Ed.2d 913 (1976) (same). Applying the United States Supreme Court decision in *Gregg,* 428 U.S. at 198-99, 96 S.Ct. at 2937, the Tennessee Supreme Court has held that:

> opportunities for discretionary action occurring during the processing of a murder case, including the authority of the state prosecutor to select those persons for whom he wishes to seek capital punishment do not render the death penalty unconstitutional on the theory that the opportunities for discretionary action render imposition of the death penalty arbitrary or freakish.

> *State v. Cazes,* 875 S.W.2d 253, 268 (Tenn. 1994); *see also State v. Brimmer,*
> 876 S.W.2d 75, 86 (Tenn. 1994); *State v. Hall,* 958 S.W.2d 679, 716
> (Tenn. 1997).  Moreover, in *Hall,* our supreme court expressly rejected the
> assertion that prosecutorial discretion to seek the death penalty violated
> the separation of powers doctrine found in Article II, § 2 of the Tennessee
> Constitution.  958 S.W.2d at 716-17.  Accordingly, we conclude that the
> decision in *Bush,* a case involving the method of counting ballots for a
> presidential election, does not invalidate the discretion of the prosecutor
> in determining whether to seek the death penalty.  This claim is without
> merit.

*Burns v. State,*  2005 WL 3504990, at 71-72  Petitioner fails to show that the state

courts' determination  is "contrary to" or "an unreasonable application of" Supreme

Court  precedent  under  § 2254(d)(1)  or  is  otherwise  "objectively  unreasonable."

*Williams,* 529 U.S. at 407-09.  Relief should be denied.  *See Gregg,* 428 U.S. at 198-99

(existence of discretionary action in the capital punishment process, including selection

by the state prosecutor of persons for prosecution for a capital offense, does not render

imposition of the death penalty arbitrary).

**CLAIM 20:  Petitioner's death sentence is arbitrary in light of the failure to charge
other suspected defendants, and the success in obtaining life sentences for other
defendants.  (Doc. No. 8, ¶¶ 282-287)**

Petitioner complains that Shaw and Moriss were not charged, that Buckner

pleaded guilty to a lesser charge, and that co-defendants Garrin and Adams received life

sentences.  This claim is yet another version of te attack on the discretion of prosecutors

to seek the death penalty.  (Claim 19, supra)  Petitioner did not raise this claim on direct

appeal. (Add. 13, v. 2, p. 125) Pursuant to Tenn. Code Ann. § 40-30-102(g), the claim

should have been considered previously determined. Nevertheless, the Court of Criminal

54

appeals in considering post-conviction appeal went to the merits of the allegation and denied relief. (Add. 12, v. 1, p. 79) The Court of Criminal Appeals affirmed. *See Burns v. State,* 2005 WL 3504990, at 72.

The decision of the state court is neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court and, thus, does not warrant relief. 28 U.S.C. § 2254(d)(1).

**CLAIM 21: Petitioner's conviction and sentence violate international law rights established in various treaties and covenant between the U.S. and other signatories insuring, among others, the right to fair trial, to be free from coercion to confess, the right to liberty and the right to be free from arbitrary searches. (Doc. No. 8, ¶¶ 288-289.4.20)**

Petitioner failed to raise this claim on direct appeal. (Add. 13, v. 2, p. 125) The appellate court properly denied relief finding that arguments such as petitioner's have been "systematically rejected by the courts." *Burns v. State,* 2005 WL 3504990, at 72. Petitioner fails to show that the state courts' determination  is "contrary to" or "an unreasonable application of" Supreme Court precedent under § 2254(d)(1) or is otherwise "objectively unreasonable." *Williams,* 529 U.S. at 407-09.

**CLAIM 22:  Petitioner is actually innocent.  (Doc. No. 8, ¶¶ 290-292.2)**

Petitioner claims that since he lacked the requisite mental state to commit first-degree murder, he is actually innocent of murder and his execution would thus violate the Eighth Amendment of the U.S. Constitution.  The Supreme Court has never held that claims of actual innocence state a ground for habeas corpus relief absent an

independent constitutional violation occurring during the underlying state criminal proceeding. *See Herrera v. Collins*, 506 U.S. 390, 399 (1993). Moreover petitioner's allegation also fail to establish a "gateway" to any procedurally defaulted claims under *Schlup v. Delo,* 513 U.S. 298 (1995). The Tennessee Supreme COurt previously determined that the evidence presented at trial was sufficient to support petitioner's murder convictions. *Burns,* 979 S.W.2d at 286-87. *Schlup*, 513 U.S. at 327 ("[T]he line between innocence and guilt is drawn with reference to a reasonable doubt."). Petitioner is not entitled to relief.

**CLAIM 23: Petitioner is incompetent to be executed. At the time of any scheduled execution petitioner will not be competent. (Doc. No. 8, ¶¶ 293-294)**

Petitioner does not have an imminent execution date. This claim is not ripe for decision in this Court. Further, state court proceedings are available for the determination of competence at any time prior to an impending execution. *See Van Tran v. State,* 6 S.W.3d 257, 264 (Tenn. 1999) *cert. denied* 529 U.S. 1091 (2000)(establishing procedure by which death-sentenced prisoner may raise issue of incompetence for execution). Once an execution date is imminent, the state courts are entitled to determine this issue in the first instance. 28 U.S.C. § 2254(b)(1), *see also Stewart v. Martinez-Villareal,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (claim of incompetency premature absent warrant for execution). This claim should be dismissed without prejudice.

**CLAIM 24: Appellate counsel was ineffective. (Doc. No. ¶¶ 295-296)**

Petitioner urges that any issue this Court might find that appellate counsel failed to raise on direct appeal constitutes deficient performance resulting in prejudice to the petitioner.  Because petitioner fails to specifically identify the factual bases for any alleged failure of appellate counsel, this claim is not in compliance with Habeas Rule 2 and should be dismissed.

In his post-conviction action in state court, petitioner raised a general challenge to the effectiveness of appellate counsel. (Add. 14, p.43) Petitioner offered proof via petitioner's original counsel on appeal about the failure to challenge the proportionality of petitioner's death sentence as compared to the life sentences of other co-defendants. (Add. 13, v. 2, p. 124; v. 3, p.315) Trial counsel was asked about his failure to challenge the constitutionality of the death penalty scheme in Tennessee as to the "absolute" discretion of the prosecutor in charging death-eligible individuals. (Add. 13, v. 2, p. 125, v. 3 pp. 316-17) Trial counsel was also asked about the constitutionality of the death penalty as violative of his right to life. (Add. 13, v. 2, p.125).  Other than these questions asked in the state post-conviction hearing, no further proof was offered.  The petitioner then abandoned this clam on appeal. (Add. 26) Petitioner's failure to comply with established state procedural rules for preserving claims for appellate review results in the procedural default of this claim.

**CLAIM 25: If this Court finds two or more constitutional errors which individually would not constitute harmful errors, their combination renders the conviction and/or sentence unconstitutional.  (Doc. No. 8, ¶¶ 297-298)**

The claim does not provide a basis for relief. The Supreme Court has not previously held that distinct constitutional claims may be cumulated to grant habeas relief. *Lorraine v. Coyle*, 291 F.3d 416,447 (6th Cir. 2002) Thus, to grant relief would constitute the use of federal habeas corpus to announce a new rule of constitutional criminal law, a result prohibited by *Teague v. Lane, supra*, and *Saffle v. Parks, supra*. Finally, petitioner's reference to the cumulative and unspecified constitutional errors fails to satisfy the specificity requirements for pleading under Habeas Rule 2(c). Any such claim has not been properly exhausted in state courts 28 U.S.C. § 2254(b). It is therefore procedurally defaulted.

## VII. CLAIMS NOT RAISED IN PETITIONER'S AMENDED PETITION

**CLAIM 1: The Tennessee appellate review process in death penalty cases is unconstitutionally inadequate . (Doc. 1, ¶9)**

Although petitioner made this allegation in his *pro se* petition, appointed counsel's amended petition makes no effort to clarify the alleged constitutional error. Although petitioner attempted to challenge the constitutionality of the appellate review process in his direct appeal before the Supreme Court (Add. 6, pp. 1; 22-30) and upon petition for writ of certiorari in the U.S. Supreme Court, petitioner fails to state with specificity the nature of the constitutional claim in this Court. The claim is therefore not properly pled pursuant to Habeas Rule 2(c). The claim should therefore be dismissed.

**CLAIM 2: Mr. Burn's death sentence is unconstitutionally disproportionate, and the Tennessee appellate review process unconstitutionally takes into consideration intuitive feelings appellate judges have about the defendant's race. (Doc. 1, ¶10)**

Petitioner made this allegation in his *pro se* petition, this issue was raised on direct appeal, (Add. 6, pp. 1; 22-30), and the U.S. Supreme Court denied certiorari on this issue. Although petitioner attempted to challenge the constitutionality of the appellate review process in his direct appeal, petitioner fails to state with specificity the nature of the constitutional claim in this Court. The claim is therefore not properly pled pursuant to Habeas Rule 2(c). The claim should therefore be dismissed. Despite this infirmity the claim to the extent any such claim is raised should fail. Comparative proportionality review of death sentences in Tennessee is a creature of state statute and not constitutionally required. *See Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871 (1984) (perceived shortcomings in application of state-law comparative proportionality review provides no basis for habeas corpus relief); *State v. Bland,* 958 S.W.2d 651, 663-64 (Tenn. 1997) ("While important as an additional safeguard against arbitrary or capricious sentencing, comparative proportionality review is not constitutionally required"). Indeed, a death sentence may be presumed to be proportionate where "it is imposed under a system which furnishes sufficient guidance to the sentence through constitutionally valid aggravating and mitigating circumstances." *McCleskey v. Kemp,* 481 U.S. 279, 306-08, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). To grant petitioner relief on his proportionality claim would thus constitute the use of federal habeas corpus to

announce a new rule of constitutional criminal law/procedure, a result prohibited by *Teague v. Lane*, *supra*, and *Saffle v. Parks supra*.

**Claim 3: The trial court unconstitutionally gave the jury a flight instruction. (Doc. 1, ¶13)**

Petitioner raised this claim on direct appeal (Add. 3, p. 27; Add. 6, p. 32). The Court of Appeals denied relief, finding tat the facts introduced at trial supported a flight instruction. The Tennessee Supreme Court affirmed the Court of Criminal Appeals' decision. The decision of the Tennessee Court of Criminal Appeals is neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court and was based on a reasonable determination of the facts in light of the evidence presented in the state court re-sentencing proceeding. 28 U.S.C. § 2254(d). Petitioner is not entitled to relief on this claim.

## CONCLUSION

For the reasons stated, the petition for writ of habeas corpus should be denied.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General & Reporter

/s/ Clarence E. Lutz
CLARENCE E. LUTZ
Assistant Attorney General
Criminal Justice Division
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3486
B.P.R. No. 17460

## CERTIFICATE OF SERVICE

A copy of the foregoing was served on the following ECF users through the

Electronic Filing System on this the 29th day of June, 2007:

Paul R. Bottei
Assistant Federal Public Defender
810 Broadway, Suite 200,
Nashville, Tennessee 37203

/s/ Clarence E. Lutz
CLARENCE E. LUTZ
Assistant Attorney General