IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|  |  |  |
|---|---|---|
| KEVIN B. BURNS, | ‖ | |
| | ‖ | |
| Petitioner, | ‖ | |
| | ‖ | |
| vs. | ‖ | No. 06-2311-SHM-dkv |
| | ‖ | |
| WAYNE CARPENTER, Warden, | ‖ | |
| Riverbend Maximum Security | ‖ | |
| Institution, | ‖ | |
| | ‖ | |
| Respondent. | ‖ | |
| | ‖ | |

---

ORDER DENYING RELIEF BASED ON MARTINEZ[1]
ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2254
ORDER GRANTING LIMITED CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING LIMITED APPEAL WOULD BE TAKEN IN GOOD FAITH

---

This case is before the Court on remand from the United States Court of Appeals for the Sixth Circuit "in light of a recent United States Supreme Court decision." See Burns v. Heidle, No. 11-5214, Doc. 75-1 (6th Cir. July 18, 2013) (Docket Entry ("D.E.") 104).[2] On August 12, 2013, Petitioner Kevin Burns, through counsel, filed an opening brief on remand. (D.E. 106.) On September 3, 2013, Respondent Wayne Carpenter filed a brief on remand. (D.E. 107.) On September 10, 2013, Petitioner filed a reply. (D.E. 109.) On

---

[1]    Martinez v. Ryan, ___ U.S. ___, ___, 132 S. Ct. 1309, 1320, 182 L. Ed. 2d 272 (2012).

[2]    References to the docket for Burns v. Heidle, No. 11-5214, in the United States Court of Appeals for the Sixth Circuit are identified by "Doc." because the Sixth Circuit uses "Document" numbers. References to this Court's CM-ECF docket are identified by "D.E." numbers.

September 16, 2013, Respondent filed a sur-reply. (D.E. 110-1.) On September 24, 2013, Respondent filed a notice of supplemental authority. (D.E. 113.) On September 26, 2013, Petitioner filed a response to Respondent's notice of supplemental authority. (D.E. 115.) On September 27, 2013, Respondent filed a reply to Petitioner's response to the notice of supplemental authority. (D.E. 117-1; *see* D.E. 119.) On October 21, 2013, Petitioner filed a notice of declaration of Petitioner's post-conviction counsel Donald Dawson. (D.E. 120.) On December 22, 2013, Respondent filed a notice of supplemental authority in support of response to Petitioner's remand brief. (D.E. 123.) On December 23, 2013, Petitioner filed a response to Respondent's notice of supplemental authority and a notice of supplemental authority. (D.E. 124 & 125.) On January 16, 2014, Petitioner filed a notice of supplemental authority. (D.E. 126.) On February 19, 2014, Respondent filed a notice of supplemental authority in support of response to Petitioner's remand brief. (D.E. 128.) On February 24, 2014, Petitioner responded to Respondent's February 19, 2014 notice of supplemental authority. (D.E. 130.) On March 27, 2014, Petitioner filed a notice of supplemental authority. (D.E. 132.) On July 4, 2014, Respondent file a notice of supplemental authority. (D.E. 133.)

I.   **BACKGROUND**

The jury convicted Petitioner on two counts of felony murder

2

for the deaths of Tracy Johnson and Damond Dawson and two counts of attempted felony murder. State v. Burns, No. 02C01-9605-CR-00170, 1997 WL 418492, *1 (Tenn. Crim. App. July 25, 1997). The jury sentenced Burns to death for the murder of Damond Dawson. Id. at *16. Eric Thomas was shot in the chest and stomach during the incident in which Johnson and Dawson were killed. *See* Burns v. State, No. W2004-00914-CCA-R3-PD, 2005 WL 3504990, at *2 (Tenn. Crim. App. Dec. 21, 2005), *perm. app. denied* (Tenn. 2006). Thomas made a photo identification of Petitioner two days after the incident. *See* id. Thomas testified at Petitioner's trial that Petitioner, along with others, "opened fire" after robbing Thomas and his friends of their jewelry and money. Id.[3] Thomas initially told police that he had been shot by Carlito Adams, but Thomas later explained that he gave police Adams's name because Adams was the only person he knew. Id.

After a state court appeal and post-conviction proceedings, Petitioner filed a habeas petition in this Court. In an amended petition for writ of habeas corpus, Petitioner alleged the following claims pertinent to this remand: ineffective assistance of counsel at the guilt stage (Claim 1); ineffective assistance of counsel at the sentencing stage (Claim 11); that Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated

---

[3]      Derrick Garrin and Carlito Adams were tried separately from Petitioner for conduct related to the same incident. Burns, 2005 WL 3504990, at *6.

because Thomas's testimony that Photograph 5 was a photograph of the person who shot Dawson was based on an unduly suggestive photo array (Claim 6); that Petitioner's Fifth, Eighth, and Fourteenth Amendment rights were violated by the trial court's admission of Petitioner's statement into evidence (Claim 7); that Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial judge provided unconstitutional jury instructions at the guilt stage (Claim 9) and at the sentencing stage (Claim 13); that Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated by the prosecution's improper remarks during closing arguments at sentencing (Claim 14); that Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court did not answer the jurors' questions during sentencing (Claim 15); and that Petitioner's Sixth, Eighth, and Fourteenth Amendment rights were violated because the grand jury that indicted Petitioner systematically excluded women as grand jury forepersons (Claim 16). (D.E. 8 at 15-20, 26-50.)

On May 13, 2008, Respondent filed a motion for summary judgment and supporting memorandum. (D.E. 57 & 58.) On January 30, 2009, Petitioner filed a motion for partial summary judgment, a supporting memorandum, and a response to the Respondent's motion for summary judgment. (D.E. 84-86.) On March 27, 2009, Respondent filed a response in opposition to Petitioner's motion for partial summary judgment. (D.E. 91.) On May 27, 2009, Respondent filed a

4

reply to Petitioner's response in opposition to Respondent's motion for summary judgment. (D.E. 94.)

On September 22, 2010, the Court entered an order granting Respondent's motion for summary judgment, denying Petitioner's motion for partial summary judgment, denying the petition and dismissing the case. (D.E. 95.) The Court granted a limited certificate of appealability ("COA") on the issue of ineffective assistance of counsel at sentencing (Claim 11) and certified that a limited appeal would be taken in good faith. (D.E. 95 at 1, 124-125.)

On February 17, 2011, Petitioner filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit. (D.E. 99.) On July 11, 2011, Petitioner filed a motion to expand the COA for "all claims raised in his federal amended habeas corpus petition." (Doc. 19 at 1, 3-4.) Petitioner briefed six issues: Claims 3, 4, 16, 18, ineffective assistance of counsel in post-conviction proceedings as cause for procedural default, and whether Claim 16 was procedurally barred where there is no state process available to address the federal claim. (See id. at 5, 11-22.)

On February 8, 2013, the Sixth Circuit expanded the COA to include the following issues:

(1) whether the State improperly relied on inconsistent statements from a witness [Eric Thomas] concerning who shot him (Claim 3);

(2) whether the State knowingly presented Eric Thomas's false testimony (Claim 4);

5

(3) whether women were improperly under-represented in being appointed as the foreperson for Shelby County, Tennessee grand juries (Claim 16); and

(4) whether ineffective assistance by counsel in state post-conviction proceedings can constitute cause to excuse Burns's procedural default of a claim under <u>Martinez</u>.

(*See* Doc. 52-1 at 3; *see also* Doc. 19 at 5, 11-14, 19.)[4] The Sixth Circuit "deemed waived" Petitioner's request for a COA for the remaining claims because they were "adverted to in a perfunctory or conclusory manner, unaccompanied by some effort on appeal at a developed argument." (Doc. 52-1 at 2-3.) The Sixth Circuit held that Petitioner had not made a substantial showing of the denial of a federal constitutional right for the remaining issues raised in Petitioner's motion to expand the COA. (<u>Id.</u> at 3.) Petitioner was not granted a COA for any of his guilt phase ineffective assistance of trial counsel claims.

On July 3, 2013, Petitioner filed a motion to remand stating that he had raised a claim of ineffective assistance of counsel based on his trial attorneys' failure to challenge the State's witness's [Thomas's] photo identification. (Doc. 64-1 at 1.) Petitioner argued that Thomas's identification testimony contradicted his prior testimony in Petitioner's co-defendants'

---

[4] In addition to the issues for which a COA was granted, Petitioner briefed the issues of "whether the State improperly pursued the death penalty after offering [Petitioner] a life sentence as part of a plea agreement" and "whether a state process existed for review of Burns's claims regarding the under-representation of women serving as grand jury forepersons." (Doc. 52-1 at 2.)

trials and was the only testimony that inculpated Petitioner for the killing for which he was sentenced to death. (Id.)

On July 4, 2013, Respondent filed a response and argued that, even if Trevino v. Thaler, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), extended Martinez to Tennessee, Petitioner's claims were insubstantial. (Doc. 68 at 15.)

On July 11, 2013, Petitioner filed a reply. (Doc. 71.) He asserted that the ineffectiveness claim at issue was "based on" his trial counsel's failure to object to Thomas's identification of Petitioner's picture. (Id. at 9.) Petitioner argued that his claim was "substantial" because it was based on trial counsel's failure to object to the same prosecutorial misconduct on which the Sixth Circuit had already granted a COA - whether the State improperly relied on inconsistent statements from Thomas about who had shot him or knowingly presented false testimony. (Id. at 8-9.) Petitioner asserted that Thomas's in-court identification of Petitioner's picture as the person who shot Thomas and killed Dawson was at the core of Petitioner's claim and that Thomas's testimony was material because Petitioner was sentenced to death for Dawson's killing based on the belief that Petitioner was the triggerman. (Id. at 9.) Petitioner asserted that Respondent "attempts to obscure the issue" and "focuses on the question of criminal liability in order to cast a shadow on the sentencing prejudice to Petitioner from being condemned to death for only the

7

killing that Thomas's testimony attributed to him." (Id.)

## II. <u>MARTINEZ</u>

In 2012, the Supreme Court rendered its decision in <u>Martinez</u>, ___ U.S. at ___, 132 S. Ct. at 1320, which recognized a narrow exception to the rule stated in <u>Coleman</u>[5], "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding . . . ." In such cases, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Martinez</u>, ___ U.S. at ___, 132 S. Ct. at 1320. The Supreme Court emphasized that "[t]he rule of <u>Coleman</u> governs in all but the limited circumstances recognized here. . . . It does not extend to attorney errors in other proceedings beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial . . . ." <u>Id.</u> The requirements that must be satisfied to excuse a procedural default under <u>Martinez</u> are:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review

---

[5]    <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

collateral proceeding."

<u>Trevino</u>, ___ U.S. at ___, 133 S. Ct. at 1918 (2013) (quoting <u>Martinez</u>, ___ U.S. at ___, 132 S. Ct. at 1318-1321)) (emphasis and revisions in the original).

<u>Martinez</u> arose under an Arizona law that did not permit ineffective assistance claims to be raised on direct appeal. In the Supreme Court's subsequent decision in <u>Trevino</u>, ___ U.S. at ___, 133 S. Ct. at 1921, the Supreme Court extended its holding in <u>Martinez</u> to states in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." Thus, the decision in <u>Trevino</u> modified the fourth requirement under <u>Martinez</u> for overcoming a procedural default.

Recently, the Sixth Circuit in <u>Sutton v. Carpenter</u>, 745 F.3d 787 (6th Cir. Mar. 19, 2014), has held that ineffective assistance of state post-conviction counsel can establish cause to excuse a Tennessee prisoner's procedural default of a substantial federal habeas claim that his trial counsel was constitutionally ineffective.

**III. THE HABEAS CLAIMS**

Petitioner asserts that this Court's ruling has been vitiated by <u>Martinez</u> for the following claims:

- Claim 6 - Unduly Suggestive Photo Array

9

- Claim 7 - Eighth Amendment Portion of Petitioner's Statement Claim

- Claim 9 - Unconstitutional Jury Instructions at the Guilt Stage

- Claim 13 - Unconstitutional Jury Instructions at the Sentencing Stage

- Claim 14 - Prosecutorial Misconduct During Closing Argument

- Claim 15 - Failure to Answer the Jury's Questions During Sentencing Deliberations; and

- Claim 16 - Sex Discrimination in the Selection of the Grand Jury Foreperson.

(D.E. 106 at 20; *see* D.E. 86 at 139.)[6] Petitioner argues that the Court should grant an evidentiary hearing because these claims were rejected based on "the then-dispositive rule of *Coleman.*" (D.E. 106 at 20; *see* D.E. 95 at 28-30.)

## IV. ANALYSIS

### A. Petitioner's Habeas Claims Are Not Within the Scope of Martinez

None of the claims asserted for which Petitioner seeks relief under <u>Martinez</u> is an ineffective assistance of trial counsel claim. (*See* D.E. 8 at 26-30, 46-49.)[7] In response to Respondent's argument in his motion for summary judgment that these claims had been

---

[6]    Petitioner's argument in the motion to remand was on the single issue of ineffective assistance related to counsel's failure to object to Eric Thomas's identification testimony, *see supra* pp. 6. (*See* Doc. 64-1 at 1; *see also* Doc. 71 at 8-9.)

[7]    Petitioner alleges generic Sixth Amendment violations for Claims 6, 9, and 13-16. (D.E. 8 at 26, 28-30, 46-49.) As to Claim 16, Petitioner alleges a denial of the right to equal protection under the Sixth Amendment, not  the denial of the Sixth Amendment right to the effective assistance of counsel. (*See* D.E. 8 at 49.)

procedurally defaulted, Petitioner asserted that ineffective
assistance of counsel provided cause for any failure to present
them. (D.E. 86 at 138.) Petitioner said:

> Regrettably, Mr. Burns must now take this Court into
> the Goldbergian analysis the United States Supreme Court
> has established to determine if ineffective assistance of
> counsel can serve as cause to excuse a procedural
> default.

(Id.) Petitioner first addressed "the well-established law that
ineffective assistance of counsel provides cause for excusing a
procedural default" of the claims at issue, which he designated
"IAC-C". (Id. at 138-139.) He relied on Supreme Court precedent in
Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S. Ct. 1587, 146 L.
Ed. 2d 518 (2000), which states that the underlying ineffective
assistance claim must also have been raised in the State court
proceedings for "IAC-C" to provide cause for a procedural default.
(Id. at 138-140.) Petitioner argued that, if the underlying
ineffective assistance claims had been defaulted, Petitioner could
establish cause for that default, or "IAC-C-C", because
Petitioner's Fourteenth Amendment right to effective representation
in the post-conviction proceedings was violated. (Id. at 138-141.)

As to the claims at issue, the Court concluded that, "Burns
did not exhaust in state court the ineffective assistance of
counsel issues he now asserts as cause for the above-enumerated
claims." (D.E. 95 at 28-29.) The Court held that Claims 6, 7, 9,
and 13-16 were defaulted "[b]ecause the ineffective assistance

11

claims on which Burns relies to establish cause for claims 6, 7, 9, and 13-16, . . . , are themselves procedurally defaulted." (D.E. 95 at 30.)

Petitioner now argues "that trial counsel's ineffectiveness was cause for the procedural default of certain claims and, because his first opportunity to litigate that ineffectiveness occurred in post-conviction proceedings, the ineffectiveness of his post-conviction counsel was cause for the failure to raise those claims." (D.E. 106 at 20; *see* D.E. 86 at 139-41.) Petitioner asserts that, "[i]n view of the intervention of *Martinez* and its import for Petitioner's habeas proceedings, this court should set an evidentiary hearing in this matter to permit factual development of post-conviction counsel's ineffectiveness and the prejudice to Petitioner." (D.E. 106 at 20.)

<u>Martinez</u> is limited to claims of ineffective assistance of trial counsel, *see* supra pp. 8-9. The Sixth Circuit in <u>Hodges</u>[8] denied relief from the procedural default of a juror misconduct claim based on <u>Martinez</u>, reasoning that:

> The Court in *Martinez* purported to craft a narrow exception to *Coleman*. We will assume that the Supreme Court meant exactly what it wrote: "*Coleman* held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel *at trial.*" The Supreme Court further insisted:

---

[8]    <u>Hodges v. Colson</u>, 727 F.3d 517, 531 (6th Cir. 2013), *reh'g and reh'g en banc denied* (Feb. 14, 2014).

> The rule of *Coleman* governs *in all but the
> limited circumstances recognized here.* The
> holding in this case does not concern attorney
> errors in other kinds of proceedings,
> including appeals from initial-review
> collateral proceedings, second or successive
> collateral proceedings, and petitions for
> discretionary review in a State's appellate
> courts. It does not extend to attorney errors
> in any proceeding beyond the first occasion
> the State allows a prisoner to raise a claim
> of ineffective assistance at trial, even
> though that initial-review collateral
> proceeding may be deficient for other reasons.
> In addition, the limited nature of the
> qualification to *Coleman* adopted here reflects
> the importance of the *right to the effective
> assistance of trial counsel* and Arizona's
> decision to bar defendants from raising
> ineffective-assistance claims on direct
> appeal. Our holding here addresses *only* the
> constitutional claims presented in this case,
> where the State barred the defendant from
> raising the claims on direct appeal.

Hodges, 727 F.3d at 531 (quoting Martinez, 132 S. Ct. at 1316

(internal citations omitted)). The Court in Hodges also denied

Martinez relief for the procedural default of a substantive

competency claim. Id. at 540.

     In Olmos v. Ryan, No. CV-11-00344-PHX-GMS, 2013 WL 3199831, at

*9 (D. Ariz. June 24, 2013), the petitioner argued that he

"received ineffective assistance of counsel at the first post-

conviction relief proceeding when counsel there failed to argue

that trial/appellate counsel was ineffective for failing to argue

that the prosecution's peremptory strikes were unconstitutional."

The petitioner argued that the ineffective assistance of post-

conviction counsel "then serves as cause to excuse the default of

the claim that trial/appellate counsel was ineffective, which then serves as cause to excuse Olmos' default of the underlying claim." Id. The court opined that "Olmos attempts to derive support for the viability of this labyrinthine causal chain from *Martinez v. Ryan,* but that reliance is misplaced." Id. at *10. The court concluded that the petitioner's claim was not a claim of ineffective assistance of counsel, but a substantive claim of a constitutional violation that was defaulted when the petitioner failed to raise it on direct review. Id. The court rejected Olmos's attempt "to extend *Martinez* to situations where the ineffective assistance claim is merely the excuse for a procedural default – not the base claim itself" and described Olmos's argument as a "dizzying chain of excuses" for his failure to exhaust his substantive claims. Id.

This Court finds no reason to extend the limited holding in Martinez to claims other than ineffective assistance of trial counsel. Petitioner is not entitled to Martinez relief for Claims 6, 7, 9, 13, 14, 15, and 16. Those claims are procedurally defaulted.

**B.   Eric Thomas's Photo Identification (Claims 1C and 6)**

In Claim 1C of his amended petition, Petitioner alleged that his trial counsel rendered ineffective assistance of counsel at the guilt stage because he failed to have Thomas's identification testimony suppressed. (D.E. 8 at 15, 18-19.) Petitioner alleged that, at trial, Thomas identified the "person who shot Dawson and him as the person depicted in photograph number '5' of a six-person

14

photographic array." (<u>Id.</u> at 19.) Petitioner alleged that
Photograph 5 unduly suggested that Thomas should pick Petitioner
because: (1) Petitioner was the only man in the array without
facial hair; (2) a piece of tape was directly underneath
Petitioner's photo and only his photo; and (3) Petitioner's photo
was the only one with a cinder block wall as a background. (<u>Id.</u>)
This Court held that Petitioner had not established cause in the
form of ineffective assistance of post-conviction counsel to
overcome the procedural default of Claim 1C. (*See* D.E. 95 at 31.)

Petitioner did not include his guilt phase ineffective
assistance of counsel claim in Claim 1C in the list of claims that
should be reviewed pursuant to <u>Martinez</u>, *see* supra p. 9-10. (*See*
D.E. 106 at 20.) Petitioner connects Claim 1C to Claim 6, which
asserts a constitutional violation because Thomas's testimony was
based on an unduly suggestive photo array. (*See* D.E. 106 at 21-38;
*see* D.E. 8 at 18-19, 26.) As stated above, supra p. 14, Claim 6
does not allege ineffective assistance of trial counsel and is not
within the scope of <u>Martinez</u>. Because Claim 1C is an ineffective
assistance of trial counsel claim, the Court will address it to the
extent Petitioner may be seeking review under <u>Martinez</u>.

Petitioner contends that Claim 1C is substantial because the
Sixth Circuit has granted a COA on claims based on Thomas's
testimony. (D.E. 106 at 21-38.) Petitioner argues that Thomas was
the State's key witness in Petitioner's capital prosecution and the
"the sole survivor of the shootout" where Damond Dawson and Tracy

Johnson were killed. (Id. at 21.) Petitioner asserts that, although the two co-defendants who were tried before Petitioner were convicted of felony murder for the killings, Petitioner was the only one sentenced to death. (Id.) Petitioner argues that his counsel failed to object to the admission of Thomas's identification on the grounds that the photo line-up was unduly suggestive, that Thomas had never identified Petitioner as having shot anyone, and that Thomas had earlier testified that a different person had shot him and Dawson. (Id. at 22-29.) Petitioner argues that Thomas's photo-identification was the product of an unduly suggestive line-up and contradicted by Thomas's earlier statements and sworn testimony. (Id. at 31.) Petitioner asserts that, although Petitioner was sitting at the defense table, Thomas never identified Petitioner as the person who shot him. (Id.) Petitioner argues that Thomas testified at Derrick Garrin's trial that Garrin, "the big guy with glasses", shot Thomas and killed Dawson. The Petitioner argues that, instead of soliciting conflicting testimony about the identity of the shooter, the State used "prosecutorial gamesmanship" and solicited Thomas's testimony that, before the trial, Thomas had identified photograph number 5 as the person who shot him and killed Dawson. (Id.) Then, the State had Thomas point to Petitioner's picture at trial for the jury to make the connection that Petitioner was the person who shot Thomas and killed Dawson. (Id.)

Petitioner argues that there was no in-court identification to

challenge, so it is the reliability and veracity of Thomas's pre-
trial identification and the "the likelihood of misidentification"
that violates Petitioner's right to due process. (Id. at 31-32.)
Petitioner argues that the police showed Thomas a lineup that
included Petitioner's pictures and five others, with one picture
appearing twice. (Id.) Petitioner contends that two of the
remaining three suspects were substantially older than Petitioner's
age in the photograph, and that those men had substantial
mustaches, although all of the suspects were described as young men
without facial hair. (Id. at 32-33.) Petitioner argues that his
trial counsel's failure to object to the admission of this
testimony was "patent deficient performance" that prejudiced him in
the form of a death sentence. (Id. at 33-34; see id. at 36-37.)

Petitioner argues that, during the post-conviction hearing,
his trial counsel acknowledged the importance of seeing how the
State would proceed at Petitioner's co-defendants' trials. (Id. at
34.) Petitioner asserts that his trial counsel did not think to
challenge Thomas's testimony "[i]n spite of all of this preparation
and a strategy that the evidence supported." (Id.) Petitioner
asserts that his trial counsel did not move to suppress Thomas's
identification because of the suggestiveness of the photospread or
because the identification was "at odds with the police report."
(Id.) Petitioner argues that his trial counsel failed to challenge
the admission of Thomas's pre-trial identification even "[w]hen
their stated defense strategy was to make clear that Petitioner was

17

not the trigger man." (Id. at 36.)

Petitioner contends that the Sixth Circuit granted a COA for his claims that the State improperly relied on inconsistent statements or knowingly presented Thomas's false testimony about who shot him and killed Dawson. Thus, Petitioner contends the Sixth Circuit has already found the issues of the prosecution's use of Thomas's testimony adequate to deserve encouragement to proceed further based on the Miller-El[9] standard, and Petitioner's claim of ineffective assistance of trial counsel is substantial under Martinez. (Id. at 37-38.) The Sixth Circuit did not expand the COA to include Claim 1C, Claim 6, or any ineffective assistance of trial counsel claim, *see* supra pp. 5-6. (*See* Doc. 52-1 at 2.) The Sixth Circuit deemed those issues for which Petitioner did not present an argument with any specificity to be waived, *see* supra p. 6. (Id. at 2-3.) Claim 1C was not one of the issues that Petitioner specifically argued. It was waived. (*See* Doc. 19 at 5, 11-22.)

Claims 3 and 4 were raised in the motion to expand the COA and are related to Thomas's testimony. In Claim 3, Petitioner incorporated his previous arguments, including those in Claim 1C, and addressed Thomas's identification of photograph number 5 and the prosecution's reliance on that identification in closing argument. (Id. at 24.) In Claim 4, Petitioner incorporated his previous arguments and asserted that he did not match Thomas's

---

[9]    Miller-El v. Cockrell, 537 US. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

18

previous description of the shooter at Garrin's trial. (Id.) Petitioner argued that there is a reasonable probability that the jury would not have convicted Petitioner and sentenced him to death had the State not presented Thomas's perjured testimony. (Id. at 24-25.) The Court will review the grant of a COA for Claims 3 and 4 to determine whether that grant is sufficiently similar to the allegations in Claim 1C to determine that Claim 1C has "some merit" and is "substantial" under Martinez.

As to Claim 3, Petitioner asked the Sixth Circuit to expand the COA to include Petitioner's allegations that his constitutional rights were violated when the prosecution obtained a death sentence using inconsistent theories that, in Derrick Garrin's trial in 1994, Garrin shot Thomas and killed Dawson, and that, in Petitioner's trial in 1996, Petitioner shot Thomas and killed Dawson, see supra p. 5. (See Doc. 19 at 11-12.) Petitioner argued that "[r]easonable jurists could debate whether Petitioner's death sentence resulting from the State's prosecution of him as Dawson's killer, after the State had prosecuted Garrin as Dawson's killer, constituted a violation of Eighth and Fourteenth Amendment protections." (Id. at 13.) The Sixth Circuit expanded the COA to address "whether the State improperly relied on inconsistent statements from a witness concerning who shot him." (Doc. 52-1 at 3.)

As to Claim 4, Petitioner asked the Sixth Circuit to expand

19

the COA, arguing that that the prosecution knowingly and/or recklessly presented Thomas's false testimony that Petitioner shot him. (Doc. 19 at 13-14.) Petitioner argued that "[r]easonable jurists could debate whether the State violated the Eighth and Fourteenth Amendments when, having offered Thomas's testimony to inculpate Garrin specifically for shooting Thomas and killing Dawson, the prosecutor offered fundamentally contradictory testimony *from the same witness* in order to put Petitioner on death row." (<u>Id.</u> at 14.) Petitioner argued that the court should grant a COA on the claim that "in violation of due process, [Petitioner] was sentenced to death based upon the knowing presentation of false testimony." (<u>Id.</u>) The Sixth Circuit granted a COA to determine "whether the State knowingly presented false testimony," *see* supra p. 5. (*See* Doc. 52-1 at 3.)

In Claim 1C of his amended petition, Petitioner alleged that his trial counsel failed to have Thomas's identification testimony suppressed. (D.E. 8 at 18-19.) Petitioner alleged that, at trial, Thomas identified the "person who shot Dawson and him as the person depicted in photograph number '5' of a six-person photographic array." (<u>Id.</u> at 19.) Petitioner alleged that photograph number 5 unduly suggested that Thomas should pick Petitioner because: (1) Petitioner was the only man in the array without facial hair; (2) a piece of tape was directly underneath Petitioner's photo and only his photo; and (3) Petitioner's photo was the only one with a

20

cinder block wall as a background. (Id.) Claim 1C addresses the suggestive photo array as the basis for Thomas's identification testimony. It does not address Thomas's inconsistent statements or the knowing presentation of false testimony, the issues on which Petitioner received a COA, see supra p. 5.[10]

Claims 3 and 4 address concerns about Thomas's testimony, his identification of Petitioner as the shooter who killed Dawson and shot Thomas, and the inconsistencies between Thomas's previous statement, testimony at the Garrin trial, and testimony at Petitioner's trial. The focus of Claims 3 and 4 in the motion to expand COA was the State's role in soliciting and presenting Thomas's testimony and the extent to which that testimony caused Petitioner to receive a death sentence, see supra pp. 19-20.

Claim 1C addresses ineffective assistance of counsel at the guilt phase. Petitioner was convicted of felony murder and "admitted he was present on the scene armed with a gun and that he fired his gun." Burns, 2005 WL 3504990, at *47-48; see State v. Burns, 979 S.W.2d 276, 278 (Tenn. 1998). Mary Jones "unequivocally identified" Petitioner as the shooter. Burns, 2005 WL 3504990, at *1, 6, 54. As the Court previously said about trial counsel's purported failure to investigate and present available evidence,

---

[10]    This Court ruled on the merits of Petitioner's claims that the State asserted inconsistent theories about who shot and killed Damond Dawson and that the State presented Eric Thomas's false testimony that Petitioner shot Thomas and killed Dawson (Claims 3 and 4). (See D.E. 95 at 57-61.)

> Burns admitted that he was present and fired his gun.
> Witnesses identified Burns as one of the individuals who
> took money and jewelry, and Burns' counsel testified that
> Burns told him he received jewelry from the incident.
> Burns did not have to fire a fatal shot to be guilty of
> felony murder; his participation in the robbery was
> sufficient.

(*See* D.E. 95 at 41 (citations omitted).) The Court further found
the claim that trial counsel was ineffective for failure to cross-
examine Thomas related to his identification testimony was without
merit because of the lack of prejudice to Petitioner. (<u>Id.</u> at 42-
48.)

On remand, Petitioner argues that he was prejudiced "in the
form of a death sentence for the killing that Thomas's testimony
attributed to him," not a conviction in the guilt phase. (*See* D.E.
106 at 34.) Petitioner has admitted his participation in the felony
murder. Petitioner cannot establish he was prejudiced at the guilt
phase because his trial counsel failed to establish that the photo
array was unduly suggestive or to have Thomas's identification
testimony suppressed. Claim 1C is not substantial under <u>Martinez</u>.

## V.    CONCLUSION

Petitioner is not entitled to relief under <u>Martinez</u> on Claim
1C or for the substantive constitutional violations alleged in
Claims 6, 7, 9, and 13-16. Those claims are procedurally defaulted.
The amended petition is DENIED.

## VI.    APPEAL ISSUES

There is no absolute entitlement to appeal a district court's

22

denial of a § 2254 petition. <u>Miller-El</u>, 537 U.S. at 335, 123 S. Ct. at 1039; <u>Bradley v. Birkett</u>, 156 F. App'x 771, 772 (6th Cir. 2005). The Court must issue or deny a COA when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 336, 123 S. Ct. at 1039; *see also* <u>Henley v. Bell</u>, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. <u>Miller-El</u>, 537 U.S. at 337, 123 S. Ct. at 1039; <u>Caldwell v. Lewis</u>, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. <u>Bradley</u>, 156 F. App'x at 773.

The Court has granted a limited COA on the issue of ineffective assistance of counsel at sentencing, *see* supra p. 5.

(*See* D.E. 95 at 123-125.) The Sixth Circuit expanded the COA, *see* supra pp. 5-6. On remand, the Court finds that reasonable jurists could not disagree about the applicability of <u>Martinez</u> to the resolution of Petitioner's claims. The Court further finds that Petitioner is not entitled to a COA on the remaining issues in the amended petition for which a COA has not been granted.

Federal Rule of Appellate Procedure 24(a)(3) provides that a party who was permitted to proceed in forma pauperis in the district court may proceed on appeal in forma pauperis unless the district court certifies that an appeal would not be taken in good faith or otherwise denies leave to appeal in forma pauperis. The Court CERTIFIES, pursuant to Fed. R. App. P. 24(a), that an appeal in this matter would be taken in good faith to the extent the appeal addresses the issues for which the Court and the Sixth Circuit have granted a COA. An appeal that does not address those issues is not certified as taken in good faith, and Petitioner should follow the procedures of Fed. R. App. P. 24(a)(5) to obtain in forma pauperis status.

IT IS SO ORDERED this 5th day of August, 2014.

*s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE